Emanuel H. GLOCKZIN, Jr., Appellant,

v.

Leon RHEA d/b/a Leon's Truck Shop, Appellee.

No. 01–86–00881–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 7, 1988.

Rehearing Denied March 10, 1988.

Stuart F. Lewis, Dillon, Lewis, Elmore, & Smith, Bryan, for appellant.

Jay B. Goss, Vancee, Bruchez & Goss, Bryan, for appellee.

Before EVANS, C.J., and DUGGAN and HOYT, JJ.

## OPINION

EVANS, Chief Justice.

The appellant Emanuel H. Glockzin, Jr., who is engaged in the heavy construction and trucking business, initiated this action against the appellee, Leon Rhea, d/b/a Leon's Truck Shop, a truck repair company, to secure possession and recover damages for the loss of use of his 1973 Peterbilt truck. Rhea filed a counterclaim seeking to recover the sum of $12,038.80, which he represented to be the unpaid balance due by Glockzin for repairs made on the truck. The trial court granted an ex parte temporary restraining order directing the return of the truck to Glockzin, but the record does not show that a hearing was held on the application for a temporary injunction. The cause proceeded to trial before a jury, which found all issues in favor of Rhea. The jury refused to find that Rhea had breached an oral agreement with Glockzin to repair Glockzin's truck in a good and workmanlike manner, and it also refused to find that Rhea had made any misrepresentations or engaged in any unconscionable conduct with respect to his repair warranty. The jury also found that Glockzin had suffered "0" damages and that Rhea was entitled to the sum of $10,-038.80 plus attorney's fees for the parts used and services performed in the repair of Glockzin's truck.

In seven points of error, Glockzin asserts: (1) that the evidence established, as a matter of law, that Rhea breached a "severable" contract for repair services; (2) that the jury's failure to find a breach of such contract is against the great weight of the evidence; (3) that the evidence established, as a matter of law, Rhea's misrepresentation of the repair warranty in violation of the Deceptive Trade Practices Act; (4) that the jury's failure to find such misrepresentation is against the great weight and preponderance of the evidence; (5) that there is no evidence to support the award of $10,038.80 to Rhea; (6) that the jury's finding in that respect is not supported by factually sufficient evidence; and (7) that because the evidence is insufficient to support an award of actual damages to Rhea, attorney's fees should not have been awarded.

■ To determine a "matter of law" or "no evidence" point, this Court must disregard all evidence contrary to the verdict, and if there is any remaining evidence that would support the verdict, the trial court's judgment must be upheld. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696–97 (Tex.1986). In reviewing the factual sufficiency of the evidence, this Court is to consider and weigh all the evidence in the case and to set aside the verdict if it concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). We may not substitute our opinion for that of the trier of fact merely because we might have reached a different conclusion. *Thompson v. Wooten*, 650 S.W.2d 499, 501 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.).

■ There is evidence in the record from which the jury could reasonably have decided that Rhea did not breach his contract with Glockzin regarding the repairs on Glockzin's truck. There was a history of past dealings between Glockzin and Rhea, and Glockzin had several truck repairs made at Leon's Truck Shop. Their standard arrangement was for payment for all repairs to be made in 30 days, and all repairs had a 90–day warranty on parts and labor. In December 1984, Glockzin

took his truck to Rhea for an "in-frame overhaul," and Rhea's invoice dated December 20, 1984, shows that the charges for that overhaul work totaled $9,518.78. It was agreed that Glockzin would pay one-half of that amount in 30 days with the balance due in 60 days. On January 9, 1985, Glockzin returned the truck to Rhea for an additional repair service, and Rhea issued an invoice of $1,338.61, which amount was added to Glockzin's account. On January 31, 1985, a third repair service was rendered by Rhea, and a charge of $1,181.41 was added to Glockzin's account.

At that point, Glockzin had not made any payment toward reduction of his account with Rhea, so that the unpaid balance totaled $12,038.80.

On February 12, 1985, the truck had a breakdown due to overheating, and Glockzin had the truck towed to Rhea's shop. Rhea told Glockzin that he would look at the truck, and if the repairs were the fault of his materials or workmanship, he would repair the truck under warranty. If, on the other hand, the problem was not due to his repair work, Glockzin would have to pay for the repairs. On February 13, 1985, Glockzin issued a check to Rhea for $5,000. The check stub bears invoice numbers indicating that the check was partial payment of the December 20, 1984, and January 9, 1985 invoices.

Rhea proceeded to perform a second "in-frame overhaul" on the truck, and on February 14, 1985, Rhea presented Glockzin with an invoice for that work in the amount of $6,184.13. When Glockzin refused to pay that amount, Rhea refused to surrender possession of the truck. On March 15, 1985, Glockzin recovered possession of his truck under the temporary restraining order after issuing a check to Rhea for $1,184.13 dated March 15, 1985. At trial, Glockzin testified that the $5,000 check was partial payment for the December 1984 invoice. He testified at one point that the $1,184.13 payment was made to obtain release of the truck, but he later testified that it was in payment of the January 31, 1985, invoice, which was for $1,181.41. He said that he considered the February over-

haul to be warranty work for which there should have been no charge.

On March 28, 1985, Glockzin returned the truck to Rhea for additional work, and Rhea again repaired the truck and issued an additional bill for $402.13. Glockzin issued a check for $402.13 and picked up the truck on April 3. That same day, the truck had a breakdown and was towed to Rhea's shop. Rhea advised Glockzin that the breakdown was covered by the warranty from the second overhaul performed on February 14, 1985, but that he would not perform any work under the warranty until Glockzin's entire bill in the amount of $12,038.80 was paid.

On April 8, 1985, Glockzin paid $2,000 to Rhea, but Rhea still refused to do the work. The jury's award to Rhea was the claimed amount of $12,038.80, less the credit of $2,000 for the April 8 payment.

On appeal, Glockzin contends that the undisputed evidence shows that the repairs made on February 14 and March 29 were fully paid for, and that the earlier repairs made on December 20, January 9, and January 31, remained "on account" and did not justify Rhea's refusal to meet his warranty obligations for the February 14 repair work. Thus, Glockzin argues that each of the five repair transactions was performed under a "severable contract," that the last two transactions were fully paid, and that Rhea's failure to repair under that warranty was, as a matter of law, a breach of contract.

Although the jury could have accepted Glockzin's version of the facts, it was not bound to do so. Glockzin's check stub for the $5,000 payment indicates that such payment was intended to reduce the December 1984 and January 9, 1985 invoices. The $5,000 check is dated February 13, 1985, one day before the invoice was issued for the second overhaul. At trial, Glockzin maintained that the $1,184.13 payment was intended to discharge the January 31, 1985 invoice for $1,181.41. We find that there is legally sufficient evidence to support a conclusion that the $5,000 and $1,184.13 payments were both intended to reduce the invoices for repairs made prior to the sec-

ond overhaul. We accordingly hold that the evidence does not establish a breach of contract as a matter of law, and that the jury's failure to find a breach of contract is not against the great weight and preponderance of the evidence. We overrule Glockzin's first two points of error.

■ We also overrule Glockzin's third and fourth points of error in which he complains of the jury's failure to find that Rhea misrepresented his warranty. Rhea testified that he was prepared to proceed with repairs on the truck if Glockzin had paid for the February 14 repairs and that the reason he did not proceed with repairs without payment was because the temporary restraining order prevented him from keeping the truck when the repairs were not paid. There was also testimony from other truck repairmen indicating that it was customary for truck repairs to be made under warranty only when the warranted work was paid for by the customer. The jury was entitled to believe Rhea's testimony that the repairs were not paid for and that, because of such lack of payment, Glockzin was not entitled to receive the benefits of the warranty. We hold that the evidence does not establish, as a matter of law, any misrepresentation of the repair warranty by Rhea and that the jury's findings are not against the great weight and preponderance of the evidence.

■ There is an additional reason why we must overrule Glockzin's first four points of error, which assert claims against Rhea based on breach of contract and misrepresentation under the Deceptive Trade Practices Act. In response to a single damage issue, which was unconditionally submitted, the jury refused to find that Glockzin had suffered any damages by reason of Rhea's action. Glockzin has not brought forward any complaint about the jury's failure to find in his favor on the damage issue, and its unchallenged finding renders immaterial and harmless the jury's findings on the issues regarding Glockzin's liability. *Lewis v. Isthmian Lines, Inc.*, 425 S.W.2d 893 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ).

We have discussed the evidence that supports the jury's award to Rhea of the sum of $10,038.80, and we find the evidence to be legally and factually sufficient to support such award. We therefore overrule Glockzin's points of error five and six. We also overrule point of error seven complaining that because the evidence is insufficient to support the jury's award of actual damages, attorney's fees should not have been awarded.

The judgment of the trial court is affirmed.

HOYT, Justice, dissenting.

I respectfully dissent. In points of error one and two, Glockzin asserts that: (1) the evidence established, as a matter of law, that Rhea breached a "severable" contract for repair services; and (2) the jury's failure to find a breach of the contract for services is against the great weight of the evidence. These points of error should have been sustained, and the judgment should have been affirmed in part and reversed and rendered in part.

The majority's conclusion that the jury could have reached the decision that Rhea did not breach his contract with Glockzin apparently hinges on the belief that Glockzin's and Rhea's obligations, to each other, are not severable. In my opinion, the majority's decision on the two points of error rests upon this belief. Therefore, the seminal question is whether Glockzin was entitled to repair work pursuant to his warranty agreement with Rhea, in spite of the fact that he had failed to make or complete payment for the initial repair work. I would answer the question in the affirmative for two reasons.

First, it is undisputed that the truck's failure on April 3, 1985, was due to the fault of Rhea's materials and workmanship. Rhea admitted that the problem was due to his repair work, and that it was covered under the February 14th warranty agreement, but he refused to repair the truck until Glockzin's "entire" account balance was paid. The record shows that, although separate invoices were issued for each repair, and a separate 90–day warran-

ty was extended for each repair, Rhea maintained one account for Glockzin. The record further shows that Rhea had applied all payments to the account, yet refused to admit that any reduction had occurred in the one invoice under which he had a warranty obligation. For example, on April 8th, Glockzin tendered a payment to Rhea for $2,000 that was applied to Glockzin's account. However, none of the $2,000 was applied to the February invoice.

A warranty is an agreement, collateral to the sale of goods or service, by which the seller undertakes to vouch for the condition or quality of the goods sold or service provided. *See Western Tank & Steel Corp. v. Gandy,* 385 S.W.2d 406, 409 (Tex. Civ.App.—Texarkana 1964, no writ). Even though a warranty is a part of a sales contract, it is an independent subsidiary promise, collateral to the main object of the contract, the breach of which gives rise to a cause of action for damages. *El Paso & S.W.R. Co. v. Eichel & Weikel,* 130 S.W. 922 (Tex.Civ.App.1910, writ ref'd). Unless there is a breach of the "whole" contract giving rise to the right to suspend or terminate performance, a seller is not authorized to repudiate his obligation under the warranty agreement. Tex.Bus. & Com.Code Ann. § 2.612(c) (Vernon 1968); *see Steinlein v. S. Blaisdell, Jr. Co.,* 44 S.W. 200 (Tex.Civ.App.1898, no writ); *Southern Car Mfg. & Supply Co. v. Scullin–Gallagher Iron & Steel Co.,* 38 Tex.Civ.App. 112, 85 S.W. 845 (Tex.Civ.App.1905, no writ). There is no evidence that the "whole" contract was breached. In fact, the trial court had previously intervened permitting Glockzin to post a bond in the amount of $12,000 to cover the balance owed under the account. This bond, in my opinion, made appellee whole. Appellee simply needed to establish the reasonableness and accuracy of its account and collect on the bond. Certainly this bond was equal to if not a guarantee, that the appellee would receive the account balance.

Under the law applicable to this case, it is immaterial whether the jury accepted Glockzin's version of the facts because the undisputed evidence shows that Rhea: (1) was obligated under the February 14th warranty agreement; and (2) refused to honor that warranty agreement solely because of the past due status of Glockzin's account. No agreement existed between Rhea and Glockzin to the effect that Rhea's warranty obligation was dependent upon Glockzin's timely payment.

I would conclude that the parties agreements are "severable," independent contracts, as a matter of law. Either party could commence and maintain a cause of action against the one independent of the other. This is apparent because neither claim is a compulsory counterclaim, but each requires breach before a cause of action accrues. The jury's failure to find a breach of contract is against the great weight and preponderance of the evidence. Moreover, because Rhea maintained all of Glockzin's invoices under one open account, and because he continued to accept payment on the account even after he refused to honor the warranty, he was estopped to assert that the warranty was dependent on the payment of the entire account or any particular part of the account.

I would sustain points of error one and two, reverse the take-nothing judgment against Glockzin, render judgment for Glockzin in the amount of $6,693.11, and in all other respects affirm the judgment.