**AMERICAN MAINTENANCE & RENTALS, INC., Appellant,**

v.

**Manuel ESTRADA, Appellee.**

No. 01–92–00877–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 12, 1995.

Rehearing Overruled March 30, 1995.

res would have to remove all of the iron from the cylinders before he would pay Torres for the cylinders according to the rate of payment for stainless steel. Another Commercial Metals employee advised Torres that Commercial Metals did not buy cylinders.

Torres took the cylinders back to the Freeport Blasters lot, cleaned the surface of the cylinders, and removed them from the frame. While handling the cylinders, Torres damaged the valve on one of them. The valve leaked oil. Torres did not check the pressure gauges on the other cylinders. Approximately two weeks after the first trip, he again took the cylinders to Commercial Metals.

Upon arriving, Torres told Commercial Metals' plant foreman, Rogelio Garcia, Sr. (Garcia Senior), that one cylinder was leaking oil. He showed Garcia Senior oil on his hand.

Robert J. Collins, Lori M. Gallagher and Michael C. Neel, Houston, for appellant.

Cathleen C. Herasimchuk, Houston, Gene Hagood, Alvin, for appellee.

Before OLIVER–PARROTT, C.J., and COHEN and WILSON, JJ.

## OPINION

COHEN, Justice.

This is an appeal from an award of damages in a negligence and marketing defect case. We reverse and remand.

### The Facts

In September 1988, Jose Torres, an employee of Freeport Blasters, found four sealed, 20–gallon pressurized cylinders in the yard. The cylinders were joined by pipes and attached to a frame, thus forming a single unit. The cylinders had been delivered to Freeport Blasters' lot in 1986, and Jeff Stanley, the president of Freeport Blasters, and Torres had moved them around the lot on previous occasions. Stanley told Torres that it was "okay" to put the cylinders in a pile of scrap metal that Torres was going to haul to Commercial Metals Company, a scrap metal company.

At Commercial Metals, Torres was met by Rogelio Garcia, Jr. (Garcia Junior), an employee. Garcia Junior told Torres that Tor-

Garcia Senior asked Torres why the tanks' pressure gauges indicated that the cylinders were full. Testimony differs regarding Torres' response. Torres testified that Garcia Senior answered his own question by stating that the gauges "are not working, probably." However, another Commercial Metals employee testified that Garcia Senior said he didn't want the cylinders, but changed his mind and accepted them when Torres told him they were just "water tanks."

A third Commercial Metals employee advised Torres that the company did not buy cylinders. However, Garcia Senior ordered other employees to unload the cylinders from Torres' trailer and place them in Commercial Metals' yard. Garcia Junior accepted delivery of the cylinders. He did not consult the plant manager, Francisco Cruz, as he was required to do before buying any cylinders.

Garcia Senior told Manuel Estrada, the plaintiff, to cut up the cylinders. Estrada asked what was inside the cylinders. According to Estrada's testimony, Garcia Senior told him that the cylinders contained water, and Estrada had also heard Torres say that they contained water. Estrada testified that, because he believed the men, he thought the cylinders were safe to cut.

Estrada did not independently verify the contents of the cylinders, check the pressure in the cylinders, or loosen the bolts on the cylinders to ventilate and depressurize them. He proceeded to cut the bolts off the first cylinder with his blow torch. While he was cutting the fifth bolt, the cylinder opened, and highly flammable hydraulic fluid emerged and ignited, burning Estrada severely.

Immediately after an ambulance removed Estrada, Cruz asked Garcia Senior why the cylinders were in the yard in violation of Commercial Metals' policy against accepting cylinders. Garcia Senior stated that Torres had proved to him that the cylinders were safe. Ultimately, Commercial Metals fired both Garcia Senior and Garcia Junior.

Three or four days after the accident, Stanley visited Cruz. Stanley told Cruz that he had obtained the cylinders from American Maintenance & Rentals (American) and was "definite" about this. Stanley said the cylinders had been used in offshore work.

Seven days after the accident, Stanley told Estrada's investigator that American had bought the cylinders at an auction, but wanted only a pump attached to the cylinders, so American told him to sell the cylinders themselves as scrap metal.

Estrada sued American and Freeport Blasters and sent interrogatories to Freeport Blasters. On December 29, 1988, Stanley responded on Freeport Blasters' behalf, stating that "[s]ometime in 1986, American Maintenance & Rentals, Inc. delivered [the unit of cylinders] to our place of business to have the pump on it removed." In another answer, he responded to the question, "From whom did you get the tanks?" with the answer, "American Maintenance & Rentals, Inc., a Texas corporation." He specified that he received them from Roger Hoss, American's CEO.

On March 7, 1989, Estrada deposed Roger Hoss. During the deposition, Hoss was shown a copy of Stanley's answers to Estrada's interrogatories. Hoss testified that American stored numerous pieces of equipment on Freeport Blasters' yard, but that the cylinders had not come from American, and that American had never possessed, controlled, known about, or seen the cylinders.

On March 10, three days after Hoss was deposed, Freeport Blasters, again through Stanley, amended its answers to Estrada's interrogatories. The answer stating that American had delivered the cylinders to Freeport Blasters was amended to read that "[s]ometime in 1986, *a party, unknown to me,* delivered [the unit of cylinders] to our place of business to have the pump on it removed." (Emphasis added.) The answer to the question, "From whom did you get the tanks?" was amended from the original answer, American, to "I do not know."

Trial began on February 18, 1992. Stanley testified in front of the jury that he did not know where the cylinders had come from. He was cross-examined at length about the change in Freeport Blasters' answers to Estrada's interrogatories. The judge gave the following instruction to the jury on whether Stanley's answers to interrogatories could be used against American:

This testimony in the form of interrogatories can only be utilized by a jury against the party that signed the statement. So ... you cannot consider that as any evidence against American Maintenance.... [Y]ou can consider it for purposes of impeachment. That is, in aiding you ... in judging the credibility of Mr. Stanley as to his truthfulness on the witness stand.... If you believe that [Stanley] was operating, Freeport Blasters, Inc. or Freeport Blasters, as an agent of American Maintenance and Rentals at the time the [cylinder] apparatus was received and was utilized, then in that instance and only in that instance you may consider any statements made by Mr. Stanley pertaining to where he received the apparatus as it relates to both Freeport Blasters and American Maintenance and Rentals.

Estrada produced much evidence linking Stanley and Hoss, both personally and professionally, including the following:

* Stanley had known Hoss since Stanley was four or five years old.

* Stanley and Hoss have a "pretty close relationship."

* Stanley's best friend is Hoss' son.

* Stanley had worked for a company owned by Hoss and also for a company owned by a lady who was Hoss' wife at the time.

* From the time Freeport Blasters came into existence, it did a lot of business with Hoss and American.

* Stanley and Hoss see each other almost every other day and socialize regularly.

Furthermore, when Stanley was asked if he had ever worked for American, he testified that he had not. Estrada, however, demonstrated that Stanley had sworn on a 1987 credit application that he had worked for American for five years.

Estrada also produced evidence on a debt owed by Stanley to Hoss. According to Stanley, Stanley bought two boats from Hoss in 1981 for "probably $400,000." Stanley testified that, as of October 31, 1988, he did not owe Hoss $284,000 in balance due for the boats. He was then shown a Freeport Blasters balance sheet for that date which listed a note payable to Hoss for $284,149.42 as a long term liability. Upon being shown the balance sheet, Stanley testified that "I didn't remember this." Additionally, Freeport Blasters' 1987 tax return lists a note payable in the amount of $284,149. Stanley acknowledged that he has made no payments to Hoss on the balance due.

Hoss testified that Stanley bought only one boat, for $225,000, and that Stanley had paid him in full three or four years before the trial. When asked whether Stanley had paid in cash, Hoss responded that Stanley's payment "amounted to cash to me." Hoss acknowledged that he had forgiven Stanley "hundreds of thousands of dollars of debt" since the accident.

The jury found that American's negligence and defect in the marketing of the cylinders were a proximate cause of Estrada's injuries and determined American's percentage of causation as 49 percent. It determined Freeport Blasters' percentage of causation as 50 percent, and Estrada's as one percent. It

awarded Estrada actual damages of $5,391,-000.

Only American appeals from the trial court's judgment.

### Is there Competent Evidence that American Supplied the Cylinders?

In point of error one, American contends there is no evidence or factually insufficient evidence that it supplied the cylinders.

 In reviewing the "no evidence" point, we consider only the evidence and inferences that support the verdict, disregarding all contrary evidence and inferences. *Glockzin v. Rhea*, 760 S.W.2d 665, 666 (Tex. App.—Houston [1st Dist.] 1988, writ denied). If any probative evidence supports the verdict, we overrule the "no evidence" point. *Id.* In reviewing the factual insufficiency point, we examine all the evidence. *Id.* We set aside the verdict only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* We do not substitute our opinion for that of the trier of fact. *Id.*

 Unless American supplied the cylinders, it has no liability for negligence or for a marketing defect.[1] Without the existence of a duty, there can be no liability in negligence. *Greater Houston Transportation Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). Likewise, the crux of a marketing defect claim is a duty to warn. *Houston Lighting & Power Co. v. Reynolds*, 712 S.W.2d 761, 767 (Tex.App.—Houston [1st Dist.] 1986), *rev'd on other grounds*, 765 S.W.2d 784 (Tex. 1988). A "fundamental principle" in any products liability case is that "the plaintiff must prove that the defendants supplied the product which caused the injury." *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex. 1989).

The aggregation of evidence that American supplied the cylinders includes three episodes where Stanley communicated that American did so: (1) his initial answers to Estrada's interrogatories; (2) his assertions

---

1. The only allegations of negligence and products liability made by Estrada against American are for supplying the cylinders.

three or four days after the accident to Cruz; and (3) his assertions seven days after the accident to an Estrada's investigator. American argues that each of these communications was hearsay, and should not have been admitted at trial.

### 1. Are Stanley's initial interrogatory answers hearsay?

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R.Civ.Evid. 801(d). A statement is "(1) an oral or written verbal expression or (2) non-verbal conduct of a person, if it is intended by him as a substitute for verbal expression." Tex.R.Civ.Evid. 801(a).

 Texas Rule of Civil Evidence 801(e)(1)(A) provides that a statement is *not* hearsay if the declarant testifies at trial and is subject to cross-examination on the statement, and the statement is inconsistent with his testimony and was made under oath subject to the penalty for perjury "at a trial, hearing, or other proceeding, or in a deposition. . . ." Stanley's initial answers to Estrada's interrogatories fit squarely under this rule. His initial answers are "statements," under rule 801(a), because they were a "written verbal expression." *See McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex.1992) (holding that written communication was "statement"). Stanley, the declarant, testified at trial and was subject to cross-examination on his initial answers. His initial answers are inconsistent with his trial testimony and were made under oath, subject to the penalty for perjury.

While Stanley's initial interrogatory answers were not made at a trial, hearing, or deposition, they were made at an "other proceeding." The term "proceeding" has been construed several times in Texas law, each time according to the specific context in which the term was used. *See, e.g., Riggall v. State*, 590 S.W.2d 460, 461 (Tex.Crim.App. [Panel Op.] 1979) (statute requiring defendant to be present during any pre-trial proceeding); *Southwestern Elec. Power Co. v. Martin*, 844 S.W.2d 229, 232 (Tex.App.—Texarkana 1992, writ denied) (provision of

Workers' Compensation Act allowing employee to institute proceeding for lump sum settlement); *Lawson v. State*, 697 S.W.2d 803, 806 (Tex.App.—Houston [1st Dist.] 1985) (statute regulating use of child's videotaped statement in a proceeding in the prosecution of the case), *vacated and remanded on other grounds*, 752 S.W.2d 565 (Tex.Crim.App. 1988); *Jolly v. State*, 681 S.W.2d 689, 696–97 (Tex.App.—Houston [14th Dist.] 1984) (same statute as in *Lawson* ), *rev'd*, 739 S.W.2d 345 (Tex.Crim.App.1987). We believe that term as used here is meant to denote steps and events in the process of litigation besides a trial or hearing (hence the word "other" before the word "proceeding"). Our reading of rule 801(e)(1)(A) convinces us that the term was meant to have a comprehensive definition, encompassing the various stages of the progress of a lawsuit, such as answering interrogatories. This conclusion is supported by other definitions of the word. *See, e.g.,* Black's Law Dictionary 1083 (5th ed. 1979) ("[r]egular and orderly progress in form of law, including all possible steps in an action from its commencement to the execution of judgment"); The Random House Dictionary 699 (1989) ("a series of doings or events . . . a legal step or measure").

We hold that, under rule 801(e)(1)(A), Stanley's initial interrogatory answers are not hearsay. Thus, they were admissible for their truth against Freeport Blasters. This holding, however, does not end our analysis. We must now decide whether they were admissible against American to show that American supplied the cylinders.

### 2. Could the jury properly consider Stanley's initial interrogatory answers as evidence that American supplied the cylinders?

American argues that, even if the initial interrogatory answers were admissible, they cannot constitute evidence that American supplied the cylinders. For three independent reasons, we agree.

 First, although Stanley's initial interrogatory answers were admissible, they were not admissible *against American* to prove that American supplied the cylinders. *See*

*Zenith Radio Corp. v. Matsushita Elec. Indust. Co.*, 505 F.Supp. 1190, 1226 n. 40, 1270 n. 99 (E.D.Penn.1980) (holding that, under the corresponding federal rules of evidence, interrogatory answers are not admissible against a party that was not the party that furnished the answers), *aff'd in part and rev'd in part on other grounds, In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238 (3d Cir.1983), *rev'd on other grounds, Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).[2] Texas Rule of Civil Procedure 168(2) also mandates that the statements made by Stanley in his initial answers to interrogatories not be used against American: "[T]he answers [to interrogatories] may be used *only against the party answering the interrogatories*." (Emphasis added.) Here, that party was Freeport Blasters, not American.

 We note that the judge, adhering to the law discussed above, instructed the jury that it could not consider Stanley's answers to interrogatories "as any evidence against American Maintenance," and also told it "[i]f you believe that [Stanley] was operating, Freeport Blasters, Inc. or Freeport Blasters, as an agent of American Maintenance and Rentals at the time the [cylin-

der] apparatus was received and was utilized, then in that instance and only in that instance you may consider any statements made by Mr. Stanley pertaining to where he received the apparatus as it relates to both Freeport Blasters and American Maintenance and Rentals."[3] The jury found that neither Stanley or Freeport Blasters was an agent of American in regard to the storage or handling of the cylinders. Estrada does not complain of this finding on appeal.[4]

 That the judge gave the jury a limiting instruction is the second reason we conclude that Stanley's initial interrogatory answers do not constitute competent evidence that American supplied the cylinders. "Evidence admitted only for a particular limited purpose is subject to consideration for only that purpose and may not be weighed in determining the sufficiency of the evidence to show a matter outside of the specific limitation." *Texas Commerce Bank v. Lebco Constructors, Inc.*, 865 S.W.2d 68, 76 (Tex.App.—Corpus Christi 1993, writ denied). We may therefore consider Stanley's initial interrogatory answers only for the purpose for which the judge admitted them, which was expressly not for the truth of the matter asserted, i.e., that American supplied the cylinders.

2. We made similar holdings in two cases decided before the Texas Rules of Civil Evidence became effective. *See Members Mut. Ins. Co. v. Randolph*, 477 S.W.2d 315, 316 (Tex.Civ. App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.); *Davis v. Coastal States Petrochemical Co.*, 405 S.W.2d 854, 855 (Tex.Civ.App.—Houston 1966, no writ). In *United Serv. Auto. Ass'n v. Ratterree*, 512 S.W.2d 30, 33 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.), the San Antonio Court of Appeals, relying on our decisions in *Randolph* and *Davis*, made the same holding in a case closer on point to this one.

3. Because the trial court told the jury that it may consider Stanley's initial answers to interrogatories against Stanley "for purposes of impeachment" and "in judging the credibility" of Stanley, the answers were also admissible under Tex.R.Civ.Evid. 801(e)(2)(A) (a statement is not hearsay if offered against a party and is the party's own statement).

4. Because of this finding, Estrada's argument that Stanley's initial interrogatory answers were admissible against American as proof that American supplied the cylinders, because

the answers constitute admissions by American against American, necessarily fails. Texas Rule of Civil Evidence 801(e)(2)(D), entitled "Admission by Party–Opponent," pronounces that a statement made by a party's agent, concerning a matter within the scope of his agency and made during the course of the relationship, is not hearsay if it is offered against the party. However, "it is established law in Texas that the declarations of an agent or employee are admitted against the principal or employer as an exception to the hearsay rule *but the fact of agency must first be clearly established*." *Lord v. Insurance Co. of N.A.*, 513 S.W.2d 96, 101 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.) (emphasis added); *accord Texas Gen. Indem. Co. v. Scott*, 152 Tex. 1, 8, 253 S.W.2d 651, 655–56 (1952). The fact of agency was not established here. Therefore, Stanley's statements are not admissible against American under rule 801(e)(2)(D). *See Handel v. Long Trusts*, 757 S.W.2d 848, 851 (Tex. App.—Texarkana 1988, no writ) (evidence offered for truth of the matter asserted held not admissible as admission of party-opponent where no compliance with agency requirement of rule 801(e)(2)(D)).

Third, when a trial court gives a limiting instruction, we must assume that the jury considered the evidence only for that limited purpose. *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 167 (Tex.1982); *City of Austin v. Houston Lighting & Power Co.*, 844 S.W.2d 773, 790–91 (Tex.App.—Dallas 1992, writ denied) (hereinafter *"HL & P"*) (judge instructed jury to consider alleged hearsay evidence only for limited purpose, and not for truth of the matter asserted). Therefore, presuming as we must that the jury, not finding an agency relationship between Stanley and American, followed the judge's instruction not to consider Stanley's initial interrogatory answers as evidence that American supplied the cylinders, we conclude that Stanley's initial interrogatory answers do not constitute competent evidence that American supplied the cylinders.

We next consider whether Stanley's verbal statements are competent evidence of that fact.

### 3. Are Stanley's verbal assertions hearsay?

#### A. The verbal assertions to Cruz

Stanley's assertions to Cruz are not admissible against American via rule 801(e)(1)(A) because they were not "given under oath subject to the penalty of perjury." Rule 801(e)(1)(B) cannot apply unless the assertions were *consistent* with Stanley's trial testimony. Clearly, they were not. Rule 801(e)(1)(C) cannot apply unless the assertion was an identification of a person made after perceiving him. Again, that is not the case here.

For the same reasons discussed above in footnote four, the assertions to Cruz do not qualify as rule 801(e)(2)(D) admissions by a party-opponent. Nor do they fall within rule 801(e)(2)(B), (C), or (E),[5] or within rule 801(e)(3), which only applies to depositions, or within any of the hearsay exceptions articulated in rules 803 and 804.

Nor, however, are these assertions barred from admission on the ground that they are hearsay. The judge gave the jury a limiting instruction as follows:

I will give the same instruction on it.... The jury can consider this ... for purposes of impeachment against Mr. Stanley [ ] and ... for the truth of the contents as it relates only to an issue as to Mr. Stanley.... [Y]ou can consider it as to A.M.R. [American] if there is a question of agency involved in this particular case, ladies and gentlemen, and then for that purpose.

*HL & P* involved a similar situation. There, the defendant sought to introduce a newspaper article that reflected accusations made by the plaintiff. 844 S.W.2d at 791. The judge, responding to the plaintiff's hearsay objection, instructed the jury to consider the article, not for the truth of the statements, but only to show that the statements were made and that the article's subject matter had come to the plaintiff's attention. *Id.* The court of appeals wrote:

[T]he trial court instructed the jury to consider the article only for that purpose. We assume that the jury followed the instruction.... Because the trial court limited the use of the article to show that the [plaintiff] had made accusations ... and we assume that the jury followed the court's instruction, the article was not barred by the hearsay rule and the trial court did not err when it allowed the article's admission.

*Id.* at 791–92.

Like the newspaper article in *HL & P,* Stanley's assertions to Cruz were admitted with an instruction not to consider the evidence for the truth of the matter asserted, but for only for another, limited purpose—impeachment.[6] When evidence is admitted with an instruction limiting the purpose for which the jury can consider it, and advising

---

5. Subsection (E) concerns statements made by a co-conspirator. Tex.R.Civ.Evid. 801(e)(2)(E). The reasons that these assertions do not fall within subsection (E) are discussed later in the opinion.

6. These assertions were therefore admissible under Tex.R.Civ.Evid. 801(e)(2)(A), which pronounces that a statement is not hearsay if offered against a party and is the party's own statement.

the jury not to consider the evidence for the truth of the matter asserted, admission of the evidence is not forbidden on the ground of hearsay. *HL & P,* 844 S.W.2d at 792, 793; *see Spraying Sys. Co. v. William G. Smart Co.,* 816 F.Supp. 465, 470 (N.D.Ill.1993).

Nevertheless, we conclude that these assertions do not constitute competent evidence that American supplied the cylinders. First, pursuant to *Lebco Constructors,* we may consider Stanley's statements to Cruz only for the purpose for which the judge admitted them, which was expressly not for the truth of the matter asserted, i.e., that American supplied the cylinders. Second, we presume, in accordance with *Brookhollow* and *HL & P,* that the jury followed the judge's instruction not to consider Stanley's assertions to Cruz as evidence that American supplied the cylinders.

**B. The verbal assertions to Estrada's investigator**

Stanley's assertions to Estrada's investigator were admitted despite American's hearsay objection, and the judge denied American's request for a limiting instruction that these assertions "may not be used against A.M.R. [American] for any reason." This was error.

■ These assertions were statements, not made by the declarant (Stanley) while testifying at trial, which, because there was no limiting instruction, were presented to the jury for its unlimited consideration, including for the truth of the matter asserted. As such, these assertions were hearsay. Tex. R.Civ.Evid. 801(d).

Had the judge limited the jury's consideration of this evidence, excluding consideration for the truth of the matter asserted, these assertions would have been admissible. *See HL & P,* 844 S.W.2d at 792, 793. Without a limiting instruction, however, the jury was free to consider Stanley's assertions to Estrada's investigator for any purpose, including for the truth of the matter asserted—that American supplied the cylinders. "In the absence of any directive to the fact finder to consider a piece of evidence only for a limited purpose, the fact finder may consid-

er it for any and all purposes." *Cigna Ins. Co. v. Evans,* 847 S.W.2d 417, 421 (Tex. App.—Texarkana 1993, no writ).

Because they were hearsay statements improperly admitted over objection, Stanley's assertions to Estrada's investigator are not probative, but incompetent. *See Dura–Stilts Co. v. Zachry,* 697 S.W.2d 658, 661 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Aatco Transmission Co. v. Hollins,* 682 S.W.2d 682, 685 (Tex.App.—Houston [1st Dist.] 1984, no writ). As such, these assertions do not constitute any evidence that American supplied the cylinders.

The trial court erred in admitting the evidence of Stanley's assertions to Estrada's investigator without a limiting instruction. We now turn to the issue of whether this error constitutes reversible error.

**4. Is the trial court's erroneous admission of Stanley's assertions to Estrada's investigator reversible error?**

■ To obtain a reversal of a judgment based upon error in the admission of evidence, the appellant must show that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989); *HL & P,* 844 S.W.2d at 790. We will not find reversible error in the erroneous admission of evidence where the evidence in question is cumulative and not controlling on a material issue dispositive of the case. *Gee,* 765 S.W.2d at 396. Thus, we must review the entire record to determine whether the testimony that should have been excluded is cumulative and, if not, whether the judgment was controlled by that testimony. *Id.; HL & P,* 844 S.W.2d at 791.

■ The question, then, is whether any other evidence shows that American supplied the cylinders. *See Fitzgerald v. LaFreniere,* 658 S.W.2d 692, 696 (Tex.App.—Corpus Christi 1983), *rev'd on other grounds,* 669 S.W.2d 117 (Tex.1984). If so, then the erroneously admitted evidence is cumulative, not controlling, and will not require reversal. *Gee,* 765 S.W.2d at 396; *see HL & P,* 844 S.W.2d at 791.

In addition to Stanley's assertions to Estrada's investigator, Estrada points to several items of evidence that he contends are some evidence that American supplied the cylinders. We examine each item in turn.

Estrada points out that expert testimony showed the cylinder was part of a used blow-out preventer closing unit. Even when considered with testimony from an officer of American that American would have had "use" for the type of pump that came from a blow-out preventer closing unit, and that he would have taken the cylinder that came with it to someone in the scrap metal business, this is not evidence that American ever possessed *the specific cylinder that injured Estrada*.

Estrada asserts that Hoss contradicted the officer by saying that American would have no use for such a pump. This is not evidence that American ever possessed the specific cylinder that injured Estrada. At most, it is merely evidence that the two men disagreed as to whether their company could use such a pump.

Estrada also indicates testimony from the same officer that American routinely rents and sells pumps which are the *equivalent* of the one that was originally attached to the cylinder that injured Estrada. This is not evidence that American ever possessed the specific cylinder that injured Estrada.

Similarly, that Hoss and Stanley attended auctions together, and that Hoss would buy used oil field equipment at these auctions, is not evidence that Hoss ever purchased the specific cylinder that injured Estrada.

Estrada points out that Stanley testified that only he and Hoss had authority to store equipment at Freeport Blasters' yard. This does not show, however, that someone who did *not* have such authority could not have left the cylinder there. Stanley testified that objects were frequently "dumped" or otherwise left on Freeport Blasters' yard without him having "any idea who brought them out there or why they brought them out there." In any event, the evidence of authority does not show that American ever possessed the specific cylinder that injured Estrada.

Estrada also indicates testimony that Freeport Blasters and American planned to open a shipyard together, bought equipment for it, and stored that equipment at Freeport Blasters' yard during the time the cylinder in question was delivered to the yard. This is not evidence that the specific cylinder that injured Estrada was put in Freeport Blasters' yard by American. It is not even evidence that *any* such cylinders were stored there by American.

After considering the evidence listed above and independently searching the record for evidence, we conclude that all the evidence above, taken together and viewed most favorably to the verdict, constitutes no more than a scintilla of circumstantial evidence that American supplied the cylinder. Given the weakness of the evidence, we conclude that Stanley's erroneously admitted statements to Estrada's investigator were not cumulative, but rather were vital to Estrada's case and considerably increased its persuasive power. Thus, it probably did cause the rendition of an improper judgment. TEX.R.APP.P. 81(b)(1).

### 5. Estrada's appellate arguments that the statements constitute proof that American supplied the cylinders.

On appeal, Estrada advances three arguments for the proposition that, without regard to the rest of the record, all of Stanley's statements discussed above constitute proof that American supplied the cylinders. His contentions are: (1) Hoss, acting for American, spoliated evidence (Stanley's statements that American supplied the cylinders); (2) Stanley's statements were "verbal acts"; and (3) Hoss, acting for American, made an "admission by conduct" by changing Stanley's account of where the cylinders came from.

### A. Does the spoliation rule apply here?

Estrada argues that he is entitled to a presumption that American supplied the cylinders because Hoss, acting on behalf of American, spoliated direct evidence of that alleged fact. Spoliation is the intentional destruction of evidence relevant to a case; it raises a presumption that the destroyed evidence would not have been favorable to its

destroyer. *H.E. Butt Grocery Co. v. Bruner,* 530 S.W.2d 340, 344 (Tex.Civ.App.—Waco 1975, writ dism'd); *see San Antonio Press, Inc. v. Custom Bilt Machinery,* 852 S.W.2d 64, 67 (Tex.App.—San Antonio 1993, no writ). The rule is only implicated in cases where *physical, tangible* evidence has been destroyed. *See, e.g., Brewer v. Dowling,* 862 S.W.2d 156 (Tex.App.—Fort Worth 1993, writ pending) (fetal monitor strip); *San Antonio Press,* 852 S.W.2d 64 (fan motor); *Newton v. General Manager,* 546 S.W.2d 76 (Tex.Civ.App.—Corpus Christi 1976, no writ) (foreign substance on floor); *Bruner,* 530 S.W.2d 340 (onion stalk).

■ No case or authority cited by Estrada or otherwise known to us would apply the spoliation rule to the facts of this case; here, nothing was destroyed. Stanley's statements still existed, and in fact were produced by Estrada and admitted at trial. Estrada was not entitled to a presumption that destroyed evidence would not have been favorable to its destroyer when no evidence was, in fact, ever destroyed.

**B. Were Stanley's statements "verbal acts"?**

■ Citing federal law,[7] Estrada also asserts that Stanley's statements constitute proof that American supplied the cylinders because the statements were "verbal acts." "Verbal acts" and "verbal parts of an act" are statements "in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights." *Mueller v. Abdnor,* 972 F.2d 931, 937 (8th Cir.1992). An example of a verbal act is a contract, a statement to which the law attaches duties and liabilities based on the statement's content. *Id.* Thus, the

contractual terms themselves and any communications, such as conversations, letters, and telegrams, relevant to the formulation of the terms, may be admissible. *Id.*[8]

■ Because they have no inherent legal significance, Stanley's statements are not "verbal acts" or "verbal parts of an act" under the definition of those terms. Furthermore, "verbal act" evidence is admissible to show the *existence* of the statement's content (e.g., the existence of a contract's terms), not its "truth." *Mueller,* 972 F.2d at 937. Thus, even if Stanley's statements were "verbal acts" or "verbal parts of an act," they would still not constitute proof that American supplied the cylinders.

Further, pursuant to *Lebco Constructors,* we may consider Stanley's initial interrogatory answers and assertions to Cruz only for the purpose for which the judge admitted them, which was expressly not for the truth of the matter asserted, i.e., that American supplied the cylinders. Additionally, as noted above, the jury was specifically instructed, in regard to Stanley's initial answers to interrogatories and his assertions to Cruz, that it was not to consider that evidence as evidence that American supplied the cylinders. We presume, in accordance with *Brookhollow* and *HL & P,* that the jury followed the judge's instruction.

**C. Does the "admission by conduct" rule apply here?**

■ Estrada contends that the jury could have considered Stanley's statements as evidence of an "admission by conduct" on the part of Hoss, acting for American, and thus infer that American supplied the cylinders.

---

7. The federal hearsay rules and the Texas civil hearsay rules are almost identical. *Compare* Fed.R.Evid. 801–806 *with* Tex.R.Civ.Evid. 801–806. The latter were adopted from the former. *Aatco Transmission,* 682 S.W.2d at 685.

8. The Texas version of a "verbal act" is sometimes referred to as an "operative fact." *See Thomas C. Cook, Inc. v. Rowhanian,* 774 S.W.2d 679, 685 (Tex.App.—El Paso 1989, writ denied). The Texas "verbal act" rule is basically the same as the rule stated in federal cases such as *Mueller. See Quitta v. Fossati,* 808 S.W.2d 636, 642 (Tex.App.—Corpus

Christi 1991, writ denied) ("[T]estimony by appellees concerning their negotiation of the modification agreement ... was not hearsay, because the agreement to modify itself has legal significance without regard to the truth of the matters asserted."); *Rowhanian,* 774 S.W.2d at 685 ("Statements that constitute offer, acceptance or terms of a contract—so-called 'operative facts'—are not hearsay; the making of such statements are in themselves relevant and thus evidence that such statements were made is not barred by the hearsay rule.").

The Third Circuit defines "admission by conduct" as a wrongdoing committed by a party, in connection with its case, that amounts to an obstruction of justice and that gives a factfinder reason to believe that the party thinks its case is so weak that it perhaps cannot be won without resorting to improper means. *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 922 (3d Cir.1985) (quoting *McCormick's Handbook on the Law of Evidence* § 273 at 660 (2d ed. 1972)). A party's improper suppression or alteration of future testimony or other evidence constitutes an "admission by conduct," and is evidence that the party is conscious that its case is weak or unfounded. *Id.* at 921 (quoting 2 *Wigmore on Evidence* § 278(2) at 133 (Chadbourn rev. 1979)), 922 (quoting *McCormick's Handbook on the Law of Evidence* § 273 at 660 (2d ed. 1972)); *Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1484 (8th Cir.1987) ("Evidence of a party's attempt to influence a prospective witness' testimony is relevant to show the party's consciousness of guilt."); *Newark Stereotypers' Union v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir.1968) ("[A]n attempt by a litigant to persuade a witness not to testify is properly admissible against him as an indication of his own belief that his claim is weak or unfounded or false."); *Great American Ins. Co. v. Horab*, 309 F.2d 262, 264 (8th Cir.1962) ("[I]n a civil case, evidence that a litigant, or his agent, has attempted to influence or suppress a witness is receivable as an admission or as an indication of the litigant's consciousness that his case is weak or unfounded or that his claim is false or fraudulent.").

From the party's consciousness that its case is weak or unfounded "may be inferred *the fact itself* of the cause's lack of truth and merit." *McQueeney*, 779 F.2d at 921 (quoting 2 *Wigmore on Evidence* § 278(2) at 133 (Chadbourn rev. 1979)) (emphasis added); *see also Newark Stereotypers'*, 397 F.2d at 599. "[T]he inference indeed is one of the simplest in human experience...." *McQueeney*, 779 F.2d at 921 (quoting 2 *Wigmore on Evidence* § 278(2) at 133 (Chadbourn rev. 1979)).

There is precedent for admitting such evidence in Texas trials. In *City of Austin v. Howard*, 158 S.W.2d 556 (Tex.Civ.App.—Austin 1941, writ ref'd w.o.m.), the judge admitted testimony from the Texas Land Commissioner that, after court had recessed for the day during the trial, the City Manager and the Mayor of Austin had called him on the telephone and attempted to dissuade him from allowing one of his employees to testify for the plaintiff against the City. *Id.* at 563. The city manager and the mayor had appealed to the land commissioner's sense of collegiality, urging him that a state employee should not testify against the City; that such was not in the spirit of cooperation. *Id.* The court of appeals held that it was not error to admit the testimony, because "any attempt by a party to a suit to suppress testimony is improper, and may be shown by the adverse party." *Id.* at 563–64.

Earlier still, in *Johnson v. Whitehand*, 21 S.W.2d 41 (Tex.Civ.App.—Austin 1929, writ dism'd), a judge excluded evidence that a witness was threatened by the defendant. *Id.* at 42. The plaintiff's bill of exceptions showed that the defendant told the witness "You had better keep out of this" and that "the worst is yet to come," and that the defendant also "begged and pleaded with [the witness] not to testify...." *Id.* The court of appeals held that the judge erred in excluding the testimony, because "evidence of statements or conduct of a party to a suit tending to show intimidation, threats, or influence brought to bear upon a witness in the case is admissible...." *Id.*

We know of no reason why evidence that shows an "admission by conduct," and thus gives rise to the attendant inference of a lack of truth and merit in the admitting party's cause, should not allowed in Texas courts (provided, of course, that it is admitted with a proper instruction). We therefore join those courts such as the Eighth and Third Circuits that have approved the admissibility of "admission by conduct" evidence, and permitted the entirely logical inference that flows therefrom. We agree that "resort to the suppression ... of evidence 'indicates not a seeking after justice, but an effort to poison the stream of justice. The reaction is a

poison to the cause of him who seeks to use it.'" *Garippa v. Wisotsky*, 108 N.Y.S.2d 67, 74 (1951) (quoting *Drummond v. Drummond*, 212 Ala. 242, 244, 102 So. 112, 114 (1924)).

A party's influencing of a witness in order to obtain favorable testimony is an "admission by conduct" regardless of whether it is accomplished by bribery, intimidation, cajolery, or resort to sentiment. *McQueeney*, 779 F.2d at 922 (quoting *McCormick's Handbook on the Law of Evidence* § 273 at 660 (2d ed. 1972)); *see* 2 *Wigmore on Evidence* § 278(2) at 139 n. 5 (Chadbourn rev. 1979) (collecting cases). Here, as Estrada argues, there was circumstantial evidence that someone acting on behalf of American influenced Stanley to change his testimony from "American supplied the cylinders" (as stated in his initial answers to interrogatories, to Cruz, and to Estrada's investigator), to "I don't know who supplied the cylinders" (as stated in his amended answers to interrogatories and at trial). This evidence includes the fact that Stanley, after stating on three occasions that American supplied the cylinders, materially changed his account of where the cylinders came from, and also includes all the facts recited above that link Stanley and Hoss both personally and professionally.

We note, however, that Estrada's argument that the jury could have considered all three of Stanley's statements together as evidence of an "admission by conduct" on the part of American, and thus infer that American supplied the cylinders, necessarily ignores the assumption we must indulge in reviewing this case: When a judge gives an instruction that limits the purpose for which the jury can consider certain evidence, the court of appeals must assume that the jury followed the instruction, and did not consider the evidence for a purpose disapproved by the judge. *Brookhollow*, 642 S.W.2d at 167; *HL & P*, 844 S.W.2d at 790–91. In regard to Stanley's initial interrogatory answers and Stanley's assertions to Cruz, the judge instructed the jury that it could consider the statements only for impeachment of Stanley; following *Brookhollow* and *HL & P*, we must therefore conclude that the jury, in accordance with the judge's instructions, did not consider the evidence for any other purpose, including as evidence of an "admission by conduct" on the part of American. Furthermore, following *Lebco Constructors*, we may consider Stanley's initial interrogatory answers and assertions to Cruz only for the purpose for which the judge admitted them, which was not to show an "admission by conduct."

Nor can we hold that the jury could have considered Stanley's particular assertions to Estrada's investigator as evidence of an "admission by conduct" on the part of American, and thus infer that American supplied the cylinders. Under the circumstances of this case, it was error to admit those assertions; they were admitted, over the objections and requests of American's counsel, without limitation. Thus, the jury was free to consider them for the truth of the matter asserted. *Evans*, 847 S.W.2d at 421. Without an instruction telling the jury that it may not consider them for the truth of the matter asserted, they were inadmissible hearsay. Tex.R.Civ.Evid. 801(d).[9] Thus, *as they were admitted*, it was error to admit Stanley's assertions to Estrada's investigator.[10]

9. With an instruction telling the jury not to consider them for the truth of the matter asserted, they would not have been hearsay. *See HL & P*, 844 S.W.2d at 792. "Admission by conduct" evidence is either hearsay (when admitted with no limiting instruction) or not (when admitted with a limiting instruction). It is not a hearsay *exception*. *See* Tex.R.Civ.Evid. 802, 803 (listing hearsay exceptions).

10. None of the parties asked the trial court to admit Stanley's assertions to Estrada's investigator (or any of Stanley's other assertions) for the jury to consider as "admission by conduct" evidence. Had one of the parties asked the court to admit the assertions, but restrict the jury's use of the evidence to "admission by conduct" (an event likely to occur at retrial), the court, in fulfilling its duty under Tex.R.Civ. Evid. 105(a), could have instructed the jury as follows:

You are instructed that [whichever of Stanley's statements is at issue at the time] is admitted into evidence in this case. You are to consider this evidence only in aiding you, if it does, in deciding whether [American] has attempted to influence or suppress a witness' testimony. If you decide that [American] has attempted to influence or suppress a witness' testimony, you

### 6. Estrada's trial arguments that the statements constitute proof that American supplied the cylinders.

At trial, Estrada urged three grounds for admitting Stanley's statements into evidence as proof that American supplied the cylinders: (1) Stanley was an agent of American, and thus his statements were admissions by American against American; (2) Stanley and Hoss became co-conspirators in a conspiracy to "negate" Stanley's statements after Stanley made his statements; and (3) the statements were admissible to impeach Stanley.

### A. Were the statements admissions by a party-opponent's agent?

Texas Rule of Civil Evidence 801(e)(2)(D) pronounces that a statement made by a party's agent, concerning a matter within the scope of his agency and made during the course of the relationship, is not hearsay if it is offered against the party. At trial, the judge submitted the following question to the jury:

> [D]id Jeff Stanley and/or Freeport Blasters, Inc. operate as an agent of American Maintenance Rentals, Inc., in regard to the storage or handling of the tank?

The jury answered, "No." As noted, Estrada does not complain of this finding on appeal.

"It is established law in Texas that the declarations of an agent or employee are admitted against the principal or employer as an exception to the hearsay rule *but the fact of agency must first be clearly established.*" *Lord,* 513 S.W.2d at 101 (emphasis added); *accord Scott,* 152 Tex. at 8, 253 S.W.2d at 655–56. The fact of agency was not established here. Therefore, Stanley's statements are not admissible under rule 801(e)(2)(D).

### B. Do the statements constitute statements by a co-conspirator?

■ Texas Rule of Civil Evidence 801(e)(2)(E) mandates that a statement made by a party's co-conspirator during the course and in furtherance of the conspiracy is not hearsay if it is offered against the party. On appeal, however, Estrada abandons this argument:

> [T]he Co-conspirator Statement exemption to the hearsay rule ... does not apply because the statements were made neither during the conspiracy nor in furtherance of the conspiracy.

Such a statement of fact made to a court of appeals constitutes a judicial admission. *See Lum v. Lacy,* 616 S.W.2d 260, 261 (Tex.Civ. App.—Houston [1st Dist.] 1981, no writ).

■ In any event, we agree with Estrada (and with American, as well) that the conspiracy theory advanced by Estrada at trial is undermined by the fact that Stanley's statements implicating American necessarily *preceded* any alleged conspiracy to "negate" them, and thus the statements could not have been made during the course and in furtherance of the alleged conspiracy. Stanley's statements were not admissible under rule 801(e)(2)(E).

### C. Were the statements, even if admissible to impeach Stanley, proof that American supplied the cylinders?

Texas Rule of Civil Evidence 801(e)(1)(A) proclaims that a statement is not hearsay if the declarant testifies at trial and is subject to cross-examination on the statement, and the statement is inconsistent with his testimony and was made under oath subject to the penalty for perjury "at a trial, hearing, or other proceeding, or in a deposition[.]" However, even if Stanley's statements were

---

may consider the attempt as an admission or indication of [American's] consciousness that its defense is weak or unfounded or false or fraudulent, and from that consciousness infer the fact itself of the defense's lack of truth or merit. You may not consider [whichever of Stanley's statements is at issue at the time], or any part thereof, as evidence of the truth of the matters asserted in such statement.

The court, upon request, should also give whatever limiting instructions are necessary to cover any other proper uses of the evidence. Tex.R.Civ. Evid. 105(a). A similar "admission by conduct" instruction may be given in cases where there is evidence that the plaintiff has made such an "admission." *See McQueeny,* 779 F.2d 916 (reversing and remanding jury verdict for plaintiff because "admission by conduct" evidence that plaintiff had suborned perjury was excluded from evidence at trial).

admissible under this rule, i.e., to impeach Stanley, they would still not constitute proof that American supplied the cylinders.

The judge correctly instructed the jury that it may consider Stanley's initial interrogatory answers and assertions to Cruz for the purposes of judging Stanley's credibility, but not as evidence of the truth of the matter asserted (that American supplied the cylinders). Following *Lebco Constructors*, then, we may consider those statements only for the purpose for which the judge admitted them, which was specifically not to show that American supplied the cylinders. Following *Brookhollow* and *HL & P,* we must conclude that the jury, in accordance with the judge's instructions, did not consider Stanley's initial interrogatory answers and assertions to Cruz for any purpose other than that allowed, including as proof that American supplied the cylinders.

Stanley's assertions to Estrada's counsel's investigator came in over objection and without an instruction limiting the jury's consideration of the evidence to any purpose, including impeachment. As held above, these assertions were hearsay statements improperly admitted over objection, and are thus not probative, but incompetent. *See Dura-Stilts,* 697 S.W.2d at 661; *Aatco Transmission,* 682 S.W.2d at 685. As such, these assertions do not constitute any evidence that American supplied the cylinders.

### Conclusion

American has shown that (1) the trial court committed error in the admission of evidence (Stanley's assertions to Estrada's counsel's investigator), and (2) the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *See Gee,* 765 S.W.2d at 396; *HL & P,* 844 S.W.2d at 790. We reach the second conclusion because there is no more than a scintilla of circumstantial evidence, besides the erroneously admitted evidence of Stanley's assertions to Estrada's investigator, that American supplied the cylinders. As such, the erroneously admitted evidence was not cumulative, and was clearly controlling on a material issue dispositive of the case—whether American supplied the cylinders. The

error in admitting this evidence is therefore cause for reversal. *See Gee,* 765 S.W.2d at 396; *HL & P,* 844 S.W.2d at 790, 791.

We sustain point of error one. We decline to consider American's other points of error, because (1) the sustaining of any or all of them would entitle American, at most, to a remand, not a rendition of judgment in its favor, and (2) we cannot say that any of the other alleged errors about which American complains would be likely to recur upon retrial. Discussion of those points would be advisory and thus improper. *See Maranatha Temple, Inc. v. Enterprise Prods. Co.,* 833 S.W.2d 736, 742 (Tex.App.—Houston [1st Dist.] 1992, writ denied).

We reverse the judgment and remand the case to the trial court.