ACCEPTED
15-25-00037-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
6/23/2025 3:02 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00037-CV

# In the Court of Appeals for the Fifteenth Judicial District
# Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
6/23/2025 3:02:27 PM
CHRISTOPHER A. PRINE
Clerk

———

Texas Alcoholic Beverage Commission,
*Appellant*,

*v.*

Earl Pearson,
*Appellee.*

———

On Appeal from the
261st Judicial District Court, Travis County

———

## APPELLANT'S BRIEF

———

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney
General

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

KIMBERLY GDULA
Chief for General Litigation Division

C. LEE WINKELMAN
Assistant Attorney General
Texas Bar No. 24042176

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(737) 231-7737 | FAX: (512) 320-0667
lee.winkelman@oag.texas.gov

**ORAL ARGUMENT NOT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Rule 38.1(a) of the Texas Rules of Appellate Procedure, Appellant provides this Court with the following list of parties and the names and addresses of all trial and appellate counsel:

*Defendant-Appellant:*
*Trial & Appellate Counsel for*
*Defendant-Appellant:*

Texas Alcoholic Beverage Commission
C. Lee Winkelman
Texas Bar No. 24042176
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
lee.winkelman@oag.texas.gov
Phone (737) 231-7737
Fax (512) 320-0667

*Plaintiff-Appellee:*
*Trial & Appellate Counsel for*
*Plaintiff-Appellee:*

Earl Pearson
John F. Melton
Michael W. Balcezak
The Melton Law Firm, PLLC
925 S. Capital of Texas Hwy, Ste B225
Austin, Texas 78746
(512) 330-0017
(512) 330-0067
jmelton@jfmeltonlaw.com
michael@jfmeltonlaw.com

*Trial Judge*:

Hon. Laurie Eiserloh

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL.................................................................ii

TABLE OF CONTENTS ...........................................................................................iii

INDEX OF AUTHORITIES......................................................................................vi

STATEMENT OF THE CASE....................................................................................xi

STATEMENT REGARDING ORAL ARGUMENT ...............................................xii

ISSUES PRESENTED ................................................................................................1

STANDARD OF REVIEW .........................................................................................2

    A.    Standard of Review for Admission of Evidence........................................2

    B.    Plea to the Jurisdiction Standard ..............................................................3

    C.    Summary Judgment Standard ....................................................................4

        1.    Traditional......................................................................................4

        2.    No-Evidence...................................................................................5

STATEMENT OF FACTS ...........................................................................................6

SUMMARY OF THE ARGUMENT ...........................................................................8

    A.    First Issue: The Trial Court Erred in Overruling TABC's
        Objections to Pearson's Declaration and Relying on the
        Declaration to Deny TABC's Motion. .......................................................9

    B.    Second Issue: Assuming Pearson's Declaration was Properly
        Before the Trial Court, the Trial Court Erred in Denying
        TABC's Motion. .........................................................................................9

ARGUMENT...............................................................................................................12

    A.    The Trial Court Committed Harmful, Reversible Error in
        Overruling TABC's Objections to Pearson's Declaration and
        Relying on it as Evidence in Deciding TABC's Motion............................12

        1.    TABC Preserved this Issue for Appeal...................................14

2.  The Trial Court Committed Error in Overruling TABC's Objections and Admitting Pearson's Declaration as Evidence. ...........................14

a.  Almost all of the Declaration was Inadmissible Hearsay..................15

   i.  Saenz's Alleged Testimony and Rupp's Alleged Testimony in Pearson's Declaration Were Not Statements Against Interest under TEX. R. EVID. 803(24). .............................................................17

   ii.  Saenz's Alleged Testimony and Rupp's Alleged Testimony in Pearson's Declaration Were Not "[a]n Opposing Party's Statement" under TEX. R. EVID. 801(e)(2)................................................................19

b.  Pearson Failed to Establish that the Testimony in His Declaration Was Based on the Alleged Declarant's Personal Knowledge........................................................23

c.  Pearson's Declaration Contains an Inadmissible Legal Conclusion.........................................................26

d.  Pearson's Declaration is a Sham. ....................................26

3.  The Trial Court's Error in Admitting Pearson's Declaration was Harmful. ...................................................28

B.  Even Considering Pearson's Declaration, the Trial Court Erred in Denying TABC's Motion...........................................31

1.  This is a Circumstantial-Evidence—Not a Direct-Evidence—Case. ....................................................31

2.  TABC Established a Legitimate, Non-Discriminatory Reason for Pearson's Termination.................................36

3.  Pearson Did Not Establish that TABC's Reason for Terminating His Employment Was a Pretext for Discrimination. ...............................................39

4.  Even if the Alleged Statements in Pearson's Declaration Were Considered Direct Evidence of Discrimination, His Claim Fails as a Matter of Law. ............................42

CONCLUSION..............................................................................................43

PRAYER.....................................................................................................43

CERTIFICATE OF SERVICE....................................................................45

CERTIFICATE OF COMPLIANCE...........................................................46

APPELLANT'S APPENDIX.......................................................................47

# INDEX OF AUTHORITIES

**Cases**

*Alamo Heights Indep. Sch. Dist. v. Clark*,
544 S.W.3d 755 (Tex. 2018) ................................................................... 4, 36, 42

*Am. Maintenance & Rentals, Inc. v. Estrada*,
896 S.W.2d 212 (Tex. App.—Houston [1st Dist.] 1995, no writ) .......................28

*AutoZone, Inc. v. Reyes*,
272 S.W.3d 588 (Tex. 2008) ................................................................... 32, 33, 34

*Bauer v. Albemarle Corp.*,
169 F.3d 962 (5th Cir. 1999) .......................................................................42

*Bridges v. City of Richardson*,
354 S.W.2d 366 (Tex. 1962) ..........................................................................2

*Choctaw Properties, L.L.C. v. Aledo I.S.D.*,
127 S.W.3d 235 (Tex. App.—Waco 2003, no pet.) ............................................15

*Columbia Rio Grande Reg'l Hosp. v. Stover*,
17 S.W.3d 387 (Tex. App.—Corpus Christi 2000, no pet.) .................................15

*Cont'l Coffee Prods. v. Cazarez*,
937 S.W.2d 444 (Tex. 1996) ..........................................................................3

*Downer v. Aquamarine Operators, Inc.*,
701 S.W.2d 238 (Tex. 1985) ..........................................................................2

*Elgaghil v. Tarrant Cnty. Junior Coll.*,
45 S.W.3d 133 (Tex.App.—Fort Worth 2000, pet. denied) ...............................32

*Espalin v. Children's Med. Ctr. of Dallas*,
27 S.W.3d 675 (Tex. App.—Dallas 2000, no pet.) .............................................5

*Fed. Sign v. Tex. S. Univ.*,
951 S.W.2d 401 (Tex. 1997)...........................................................................3

*Fisher v. Yates*,
   953 S.W.2d 370 (Tex. App.—Texarkana 1997) ...................................................30

*Fossil Grp., Inc. v. Harris*,
   691 S.W.3d 874 (Tex. 2024) ................................................................. 4, 5, 6

*Frost Nat'l Bank v. Fernandez*,
   315 S.W.3d 494 (Tex. 2010) ...................................................................4

*Gee v. Liberty Mut. Fire Ins. Co.*,
   765 S.W.2d 394 (Tex. 1989) ........................................................ 2, 28, 29

*Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*,
   12 S.W.3d 827 (Tex. App.—Dallas 2000, no pet) ...............................................6

*Grimes v. Tex. Dep't of Mental Health & Retardation*,
   102 F.3d 137 (5th Cir. 1996)................................................................42

*Hasty Inc. v. Inwood Buckhorn Joint Venture*,
   908 S.W.2d 494 (Tex. App.—Dallas 1995, writ denied) ............................. 13, 14

*Hazen Paper Co. v. Biggins*,
   507 U.S. 604 (1993) ......................................................................40

*Hou–Tex, Inc. v. Landmark Graphics*,
   26 S.W.3d 103 (Tex. App.—Houston [14th Dist.] 2000, no pet.) .......................15

*Hudgens v. Univ. of Tex. M.D. Anderson Cancer Ctr.*,
   615 S.W.3d 634 (Tex. App.—Houston [14th Dist.] 2020, no pet.) .....................5

*Jackson v. Cal-W. Packaging Corp.*,
   602 F.3d 374 (5th Cir. 2010)...............................................................32

*Johnson v. Brewer & Pritchard, P.C.*,
   73 S.W.3d 193 (Tex. 2002) ..................................................................5

*Kerlin v. Arias*,
   274 S.W.3d 666 (Tex. 2008)......................................................... 23, 25

*King v. Skelly,*
   452 S.W.2d 691 (Tex. 1970) ................................................................2

*Lujan v. Navistar, Inc.*,
   555 S.W.3d 79 (Tex. 2018) ................................................................26

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*,
   289 S.W.3d 844 (Tex. 2009) ...................................................4

*McCoy v. City of Shreveport*,
   492 F.3d 551 (5th Cir. 2007) ...............................................36

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ...............................................................36

*McGraw v. Maris,*
   828 S.W.2d 756 (Tex. 1992) ..................................................2

*McMichael v. Transocean Offshore Deepwater Drilling, Inc.*,
   934 F.3d 447 (5th Cir. 2019) ...............................................32

*Mission Consol. Indep. Sch. Dist. v Garcia,*
   372 S.W.3d 629 (Tex. 2012) ..................................................3

*Price v. Valvoline, L.L.C.*,
   88 F. 4th 1062 (5th Cir. 2023) ...........................................43

*Quantum Chem. Corp. v. Toennies,*
   47 S.W.3d 473 (Tex. 2001) ..................................................32

*Randall's Food Mkts., Inc. v. Johnson*,
   891 S.W.2d 640 (Tex. 1995) ..................................................5

*Reeves v. Sanderson Plumbing Products, Inc.*,
   530 U.S. 133 (2000) ...............................................................36

*Robertson v. Alltel Info. Serv.*,
   373 F.3d 647 (5th Cir. 2004) ...............................................42

*Rosenthal v. Rosenthal*,
   Nos. 01-99-00058-CV, 01-00-00259-CV, 2001 WL 1383132 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) .........................28

*Rusk State Hosp. v. Black*,
   392 S.W.3d 88 (Tex. 2012) ........................................... 27, 33

*Skillern & Sons, Inc. v. Rosen*,
   359 S.W.2d 298 (Tex. 1962) ..................................................17

*St. Mary's Honor Ctr. v. Hicks*,
  509 U.S. 502 (1993) ...................................................37

*Staheli v. University of Mississippi*,
  854 F.2d 121 (5th Cir. 1988) ......................... 21, 22

*State v. Holland*,
  221 S.W.3d 639 (Tex. 2007) .......................................3

*Tex. Dep't of Comm. Affairs v. Burdine*,
  450 U.S. 248 (1981) ...................................................37

*Tex. Dep't of Parks & Wildlife v. Miranda*,
  133 S.W.3d 217 (Tex. 2004) .......................................3

*Tex. Natural Res. Conservation Comm'n v. IT-Davy*,
  74 S.W.3d 849 (Tex. 2002) .......................................3

*Tex. Tech Univ. Health Scis. Center El-Paso v. Flores*,
  612 S.W.3d 299 (Tex. 2020) .....................................36

*Tooke v. City of Mexia*,
  197 S.W.3d 325 (Tex. 2006) .......................................3

*United Blood Servs. v. Longoria*,
  938 S.W.2d 29 (Tex. 1997) .......................................15

*Volkswagen of Am., Inc. v. Ramirez*,
  159 S.W.3d 897 (Tex. 2004) ......................... 15, 16

*W. Invs., Inc. v. Urena*,
  162 S.W.3d 547 (Tex. 2005) .......................................5

*Yates v. Fisher*,
  988 S.W.2d 730 (Tex. 1998) .....................................30

**Statutes**

TEX. ALCO. BEV. CODE § 5.01 (a)...........................................3

TEX. GOV'T CODE § 311.034..................................................3

TEX. LAB. CODE § 21.051 ...................................................32

TEX. LABOR CODE ANN. § 21.001 ...........................................32

**Rules**

TEX. R. CIV. P. 166a(f) .................................................................................25

Tex. R. App. P. 33.1(a) ...............................................................................14

Tex. R. App. P. 44.1 .......................................................................... 2, 13, 30

TEX. R. APP. P. 44.1(a)(1) ...........................................................................28

Tex. R. Civ. P. 166a(c) ...................................................................................4

TEX. R. CIV. P. 166a(f) ...............................................................................23

TEX. R. EVID. 602 ............................................................................ 23, 24, 25

TEX. R. EVID. 801(e)(2) ...............................................................................16

TEX. R. EVID. 801(e)(2)(D) ..........................................................................20

TEX. R. EVID. 803(24) ..................................................................................16

TEX. R. EVID. 803(24)(A) .............................................................................17

**STATEMENT OF THE CASE**

| | |
|---|---|
| *Nature of the Case*: | This is an employment discrimination case under the Texas Commission on Human Rights Act ("TCHRA"). Appellee Earl Pearson, a former Texas Alcoholic Beverage Commission ("TABC") employee, alleges race discrimination in connection with his July 5, 2017, termination. CR 1-11. |
| *Procedural History:* | Pearson asserted claims against TABC under Texas Labor Code § 21.052 for race discrimination. CR.6-7. TABC filed an evidence-based Plea to the Jurisdiction and Motion for Summary Judgment ("Motion") on Pearson's race discrimination claim contending that his termination was due to legitimate, non-discriminatory reasons and in accordance with TABC policy. CR.50-123 |
| *Trial Court Disposition*: | A hearing on TABC's Motion was held on March 11, 2025. RR.1-52. The trial court signed an order denying the Motion. CR.456-57. |
| *Trial Court:* | The 261st Judicial District Court for Travis County, Texas. The Honorable Laurie Eiserloh, presiding. |
| *Jurisdiction:* | TABC timely brings this interlocutory appeal under Texas Civil Practice and Remedies Code § 51.014(a)(8). |

## STATEMENT REGARDING ORAL ARGUMENT

TABC respectfully submits that argument will not significantly aid the Court in reviewing the trial court's denial of TABC's Plea to the Jurisdiction because the issues presented are straightforward and the case law demonstrating the trial court's error can be adequately addressed through briefing. However, if the Court determines that argument would be helpful, TABC respectfully requests an opportunity to participate.

# ISSUES PRESENTED

**First Issue**. Plaintiff, Earl Pearson's sole piece of evidence in response to Defendant, Texas Alcoholic Beverage Commission's ("TABC") Plea to the Jurisdiction and Motion for Summary Judgment (the "Motion"), was a declaration containing (1) hearsay, (2) statements that were not based on the personal knowledge of the out-of-court declarants, and (3) a lay witness's legal conclusion. In addition, it was a sham declaration that directly contradicted Pearson's earlier deposition testimony. Did the trial court commit harmful error in admitting and relying on Pearson's declaration —over TABC's objections--to deny TABC's Motion?

**Second Issue**. In its Motion on Pearson's employment discrimination (race) claim, TABC presented a legitimate, non-discriminatory reason for Pearson's termination as well as evidence that no similarly situated TABC employees outside of Pearson's race were treated better than he. In response, Pearson relied almost exclusively on stray-remark evidence, not at all probative of race discrimination, to establish a genuine issue of material fact as to whether TABC's reasons for terminating him were unlawful. Did the trial court err in denying TABC's Motion?

# STANDARD OF REVIEW

## A. Standard of Review for Admission of Evidence

This Court reviews a trial court's decision to admit evidence for an abuse of discretion. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). "A trial court abuses its discretion when it acts without regard for any guiding rules or principles." *Id.* at 754 (*citing Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985)).

"To obtain reversal of a judgment based upon error of the trial court in admission or exclusion of evidence, the following must be shown: (1) that the trial court did in fact commit error; and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment." *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394 at 396 (Tex. 1989) (*citing Bridges v. City of Richardson,* 354 S.W.2d 366 at 368 (Tex. 1962) (per curiam)); *see also* Tex. R. App. P. 44.1. "A person seeking to reverse a judgment based on evidentiary error need not prove that but for the error a different judgment would necessarily have been rendered, but only that the error probably resulted in an improper judgment." *Alvarado,* 897 S.W.2d at 753 (*citing McGraw v. Maris,* 828 S.W.2d 756, 758 (Tex. 1992)); *King v. Skelly,* 452 S.W.2d 691, 696 (Tex. 1970).

## B. Plea to the Jurisdiction Standard

This Court reviews a trial court's ruling on a plea to the jurisdiction *de novo*. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). A plea to the jurisdiction based on sovereign immunity challenges a trial court's subject-matter jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007); *Miranda*, 133 S.W.3d at 225-26. Subject matter jurisdiction cannot be presumed and cannot be waived. *Cont'l Coffee Prods. v. Cazarez*, 937 S.W.2d 444, 449 n.2 (Tex. 1996). Whether a trial court has subject matter jurisdiction is a question of law for the court. *Miranda*, 133 S.W.3d at 226; *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

TABC is an agency of the state. TEX. ALCO. BEV. CODE § 5.01 (a). As a state agency, TABC is immune from suit unless the legislature has waived immunity. *Miranda*, 133 S.W.3d at 224; *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). The Texas Legislature must clearly and unambiguously waive sovereign immunity. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006); TEX. GOV'T CODE § 311.034.

"Chapter 21 of the Labor Code waives immunity from suit only when the plaintiff actually states a claim for conduct that would violate the TCHRA." *Mission Consol. Indep. Sch. Dist. v Garcia*, 372 S.W.3d 629, 637 (Tex. 2012). If a defendant

submits evidence to rebut the presumption of a *prima facie* case, sovereign immunity is not waived, and "the entire *McDonnell Douglas* framework is fully implicated and sufficient evidence of pretext…must exist to survive a jurisdictional plea." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 783 (Tex. 2018). Failure to establish pretext deprives the court of subject matter jurisdiction. *Id.* As a result, the standard of review for a plea to the jurisdiction on a plaintiff's Chapter 21 claims mirrors that of a traditional summary judgment. *Id.* at 785.

## C. Summary Judgment Standard

### 1. Traditional

This Court reviews a trial court's ruling on a motion for summary judgment that raises traditional grounds *de novo*. *Fossil Grp., Inc. v. Harris*, 691 S.W.3d 874, 882 (Tex. 2024). Summary judgment is proper when no genuine issue of material fact exists and, therefore, the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c), *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

Summary judgment is appropriate on traditional grounds when the moving party conclusively negates at least one essential element of a cause of action. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *Randall's Food Mkts., Inc.*

4

*v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Once the movant establishes its entitlement to summary judgment, the burden shifts to the nonmovant to present a genuine and material fact issue precluding summary judgment. *Hudgens v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 615 S.W.3d 634, 640 (Tex. App.—Houston [14th Dist.] 2020, no pet.). Evidence raises a genuine issue of material fact if reasonable and fair-minded jurors could differ in their conclusions in light of the evidence. *Id*. If the non-moving party fails to show the existence of a genuine issue of material fact the court must grant summary judgment. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002); *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). To determine if a fact issue exists, this Court examines the evidence in the light most favorable to the nonmovant, indulging reasonable inferences and resolving any doubts against the moving party. *Fossil Grp., Inc.*, 691 S.W.3d at 882.

### 2. No-Evidence

This Court reviews a trial court's ruling on a no-evidence motion for summary judgment *de novo*. *Fossil Grp., Inc.*, 691 S.W.3d at 882. A no-evidence motion for summary judgment places the burden on the non-movant to present summary judgment evidence raising a genuine fact issue. *Espalin v. Children's Med. Ctr. of Dallas,* 27 S.W.3d 675, 683 (Tex. App.—Dallas 2000, no pet.). This Court reviews a no-evidence motion for summary judgment under the same legal sufficiency standard used

to review a directed verdict. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.,* 12 S.W.3d 827, 832–33 (Tex. App.—Dallas 2000, no pet). Thus, the Court must determine whether the non-movant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Id.* at 833. To determine if a fact issue exists, this Court examines the evidence in the light most favorable to the non-movant, indulging reasonable inferences and resolving any doubts against the moving party. *Fossil Grp., Inc.*, 691 S.W.3d at 882.

## STATEMENT OF FACTS

Plaintiff, Earl Pearson (African-American) was TABC's former Chief of Enforcement. This is an employment discrimination (race) case stemming from his termination in 2017 as part of a complete overhaul of TABC leadership. In the spring and summer of 2017, several high-ranking officials at TABC resigned or were terminated in the wake of increased scrutiny of the agency after public criticism on multiple issues. CR.356-392 This change had nothing to do with race. CR.368-392. Rather, the controversy began when the high-ranking officials, including the Executive Director, Sherry Cook, took a trip to the National Conference of State Liquor Administrators in 2015 at a cost of more than $7,000 in taxpayer money. CR.216. Upon discovering the tax-payer funded trip, the Legislature began to scrutinize TABC and its top executives. CR.200-202.

As with the other high-ranking TABC employees who were terminated or offered the opportunity to resign, Pearson's continued employment was evaluated in light of the new direction in which the new TABC leadership wanted to take the agency. CR.179-181. Pearson was terminated after it was determined that Pearson did not exhibit the leadership and initiative that was expected from the new TABC leadership that would justify his continued employment at TABC. CR.179-181.

On July 5, 2017, Acting Executive Director Ed Swedberg notified Pearson that his employment with TABC would end and that he had the opportunity to resign from his position or be terminated at-will. CR.179-181. Pearson refused to resign and was provided with a letter dated July 5, 2017, notifying him of the termination of his at-will employment with the TABC. CR.179-181. Pearson filed an EEOC charge on November 15, 2017, claiming that he had "been discriminated against and harassed based on [his] Race." CR.197-198.

On April 9, 2018, Pearson filed suit against TABC for race discrimination in employment under the Texas Commission on Human Rights Act (TCHRA, Chapter 21 of the Texas Labor Code). CR. 1-10. TABC denies that Pearson's race had anything to do with his termination, CR. 14-16, and asserts that Pearson's claims are barred by sovereign immunity, depriving the trial court of jurisdiction. Consequently, on October 21, 2024, TABC filed a combined Plea to the Jurisdiction and

Motion for Summary Judgment. CR. 50-122. The trial court denied the Motion on March 13, 2025. CR.456.

TABC filed its Motion in accordance with the trial court's deadline for dispositive motions. CR. 41-48. Thus, on March 25, 2025, TABC instituted this appeal by filing a Notice of Interlocutory Appeal under Tex. Civ. Prac. & Rem. Code § 51.014(b), appealing the trial court's denial of its Motion. CR. 462-464. TABC asks this Court to reverse the trial court's decision and render judgment in its favor.

## SUMMARY OF THE ARGUMENT

In response to TABC's Motion on Pearson's race discrimination claim stemming from his termination, Pearson submitted his declaration in support. CR. 432-433. The declaration purported to recount a conversation Pearson, TABC's former Chief of Enforcement, had with his former TABC supervisor, Robert Saenz, shortly after Pearson's termination. *Id*. Saenz allegedly told Pearson that TABC had "fired the wrong black guy," and mistakenly fired Pearson when it meant to fire a different African-American employee, implying that the only reason Pearson was terminated was due to his race. *Id*. Saenz also allegedly told Pearson that TABC had replaced him with a white employee. *Id*. The declaration also recounted an alleged conversation that Pearson had with Don Rupp, former TABC head of Human Resources,

8

around the same time as his conversation with Saenz, in which Rupp supposedly told Pearson that TABC had no legitimate reasons for terminating Pearson. *Id*.

## A. First Issue: The Trial Court Erred in Overruling TABC's Objections to Pearson's Declaration and Relying on the Declaration to Deny TABC's Motion.

TABC objected to Pearson's declaration because, among other things, it (1) contained hearsay statements by Saenz and Rupp, (2) contained testimony from Saenz and Rupp that was not based on their personal knowledge, and (3) contained a legal conclusion by Rupp that the TABC had no legitimate basis for terminating Pearson. CR. 443-447. The trial court committed harmful error when it overruled TABC's objections RR. 34:1-2, 50:24-25; *see also* 22:17-20; 27:21-28:7; 28:13-16; 29:13-30:3; 31:7-25; 32:15-33:19; 33:25-34:8, and relied exclusively on the declaration in denying TABC's Motion. RR. 6:2-4; 24:25-26:11; 27:21-28:7; 29:5-17; 46:17-20; 47:1; 48:17-18; 50:20-25. This Court, therefore, should reverse the trial Court's decision denying TABC's Motion and render judgment in TABC's favor.

## B. Second Issue: Assuming Pearson's Declaration was Properly Before the Trial Court, the Trial Court Erred in Denying TABC's Motion.

Even assuming, however, that the declaration was admissible and properly before the trial court in ruling on TABC's Motion, the trial court still erred in denying TABC's Motion. Neither Saenz's alleged statement that TABC "fired the wrong

black guy," nor Rupp's alleged statement that TABC had no legitimate basis for terminating Pearson constitute direct evidence of discrimination. Rather, they are mere "stray-remarks," not at all probative of discrimination because Saenz and Rupp were not involved in any way in Pearson's termination. This is, therefore, a circumstantial-evidence case.

Even assuming Pearson could establish a *prima facie* case of discrimination, TABC presented ample evidence of its legitimate, non-discriminatory reason for Pearson's termination. Specifically, when TABC terminated Pearson it was undergoing a complete shift in leadership—mandated by the highest levels of state government—after documented public criticism of the agency. Indeed, virtually all of TABC's top leadership either resigned or was terminated around the same time as Pearson. TABC's new leadership terminated Pearson's employment after determining that he did not exhibit the leadership and initiative that was expected from the new TABC leadership that would justify his continued employment with TABC. TABC leadership was moving in a new direction, and Pearson was not going to be part of it. *See* CR. 206-207, 212, 215-216, 219-220, 227.

Pearson did not carry his burden of establishing that TABC's legitimate, non-discriminatory reasons for his termination were a pretext for illegal discrimination. Though Pearson argued TABC's reasons for terminating him had shifted from the

time of his termination, they had not. At the time of his termination, TABC told Pearson that TABC leadership was moving in a different direction and Pearson was not part of that direction. This is the same reason TABC asserted in its Motion. What's more, TABC presented evidence that similarly situated TABC executives who were outside of Pearson's protected class and resigned or were terminated around the same time were treated no more favorably than he. Ultimately, Pearson was left with only his own subjective belief that he was the victim of discrimination as evidence of pretext, which is insufficient as a matter of law to defeat TABC's Motion.

Finally, even if the statements in Pearson's declaration were considered direct evidence of discrimination, for the legitimate, non-discriminatory reasons discussed above, TABC has carried its burden to establish it would have made the same decision regardless of plaintiff's race.

In sum, even if Pearson's declaration was properly before the trial court in deciding TABC's Motion, the trial court erred in denying the Motion. Pearson's claim does not fit within the limited waiver of sovereign immunity expressly granted by the legislature because Pearson has failed to meet his burden to establish a genuine issue of material fact as to his race discrimination claim. This Court, therefore,

should reverse the trial court's decision denying TABC's Motion and render judgment in TABC's favor.

**ARGUMENT**

In its first issue, TABC asserts that the trial court committed harmful and, therefore, reversible error when it overruled TABC's objections to Pearson's unsworn declaration—the sole piece of evidence he provided in responding to TABC's Plea to the Jurisdiction and Motion for Summary Judgment (the "Motion"). Despite being a sham declaration, rife with hearsay testimony that was clearly not based on the alleged declarants' personal knowledge, the trial court overruled TABC's objections, and relied on the declaration in denying TABC's Motion. This Court, therefore, should reverse the trial court's decision and render judgment in favor of TABC.

**A. The Trial Court Committed Harmful, Reversible Error in Overruling TABC's Objections to Pearson's Declaration and Relying on it as Evidence in Deciding TABC's Motion.**

In response to TABC's Motion, Pearson submitted an unsworn declaration containing testimony from two other people—his former TABC supervisor, Robert Saenz, and former TABC Director of Human Resources, Don Rupp. CR. 432-433. This was his sole piece of evidence. *See* CR. 423-433. According to the declaration, soon after Pearson's termination in July 2017, Saenz told Pearson that in terminating Pearson, TABC had "fired the wrong black guy," and meant to terminate a different employee. Saenz also allegedly told Pearson that TABC had replaced Pearson as

12

Chief of Enforcement with a white male. Further, Rupp allegedly told Pearson that Pearson's work performance had nothing to do with his termination and that there "was no legitimate reason for [Pearson's] termination. CR. 432.

Not surprisingly, TABC objected to the declaration on a number of grounds (discussed below). CR. 443-448. The trial court, however, overruled all the objections, admitted the declaration as evidence, RR. 34:1-2, 50:24-25; *see also* 22:17-20; 27:21-28:7; 28:13-16; 29:13-30:3; 31:7-25; 32:15-33:19; 33:25-34:8. and relied on it in denying TABC's Motion. RR. 6:2-4; 24:25-26:11; 27:21-28:7; 29:5-17; 46:17-20; 47:1; 48:17-18; 50:20-25. TABC now appeals the trial court's decision, asserting that the court committed reversible error in relying on the declaration over TABC's objections.

In reviewing a claim that the trial court committed reversible error in admitting evidence, the court of appeals must answer three questions: (1) Did the appellant preserve the claimed error for review? (2) Did the trial court commit error? (3) And finally, was the error harmful? *Hasty Inc. v. Inwood Buckhorn Joint Venture*, 908 S.W.2d 494, 501 (Tex. App.—Dallas 1995, writ denied); *see also* TEX. R. APP. P. 44.1. If the Court's inquiry results in three affirmative answers, then the Court should reverse the trial court's decision and render judgment in favor of the appellant. *See*

*Hasty Inc.*, 908 S.W.2d at 501. In what follows, TABC addresses each question in turn, demonstrating an affirmative answer for each.

## 1. TABC Preserved this Issue for Appeal

TABC, by written motion to strike Pearson's summary-judgment evidence, objected to Pearson's declaration. Specifically, it objected that the declaration testimony was inadmissible because it contained (1) hearsay, (2) testimony that was not based on personal knowledge, (3) conclusory statements, (4) legal conclusions, and (5) statements that were unduly prejudicial and inadmissible under Texas Rule of Evidence 403. CR. 443-445. The trial court overruled these objections during the hearing on TABC's Motion, RR. 34:1-2, 50:24-25; *see also* 22:17-20; 27:21-28:7; 28:13-16; 29:13-30:3; 31:7-25; 32:15-33:19; 33:25-34:8, and considered the entire declaration in denying the Motion. RR. 6:2-4; 24:25-26:11; 27:21-28:7; 29:5-17; 46:17-20; 47:1; 48:17-18; 50:20-25. Thus, TABC preserved this issue for appellate review, and it is properly before this Court. Tex. R. App. P. 33.1(a).

## 2. The Trial Court Committed Error in Overruling TABC's Objections and Admitting Pearson's Declaration as Evidence.

A trial court errs in its decision to admit evidence when it abuses its discretion by acting without regard for any guiding rules or principles. *See Alvarado*, 897 S.W.2d at 754. "To be considered by the…court, summary judgment evidence must be…in a form that would be admissible at trial." *Choctaw Properties, L.L.C. v. Aledo I.S.D.*,

14

127 S.W.3d 235, 240 (Tex. App.—Waco 2003, no pet.) (citing *Hou–Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex. App.—Houston [14th Dist.] 2000, no pet.)); *accord United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997); *Columbia Rio Grande Reg'l Hosp. v. Stover*, 17 S.W.3d 387, 396 (Tex. App.—Corpus Christi 2000, no pet.). Moreover, the burden lies—at all times—with the proponent of the evidence, here Pearson, to establish that it is admissible. *See Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004). Before the trial court, Pearson failed to establish that his summary-judgment evidence was admissible. Indeed, the testimony in Pearson's declaration was clearly inadmissible hearsay, not based on any personal knowledge, and conclusory, and the trial court completely disregarded the Texas Rules of Evidence in admitting it.

### a. Almost all of the Declaration was Inadmissible Hearsay

The declaration states in relevant part:

> [Robert Saenz] informed me that my termination was a mistake and that [TABC] had actually meant to fire my African-American co-worker, Dexter Jones. He told me that a Texas House Representative, Sarah Davis, had issues with Dexter…According to…Saenz there was a mistake and instead of firing Dexter [TABC] fired me and had, 'fired the wrong black guy.' Robert encouraged me to contact Don Rupp, Director of Human Rexources [sic], for more information.
>
> [Don Rupp] told me specifically that my performance had nothing to do with my termination and that he was bothered by it. He also stated that he did not understand why I

15

had been terminated. I told Don that the Texas Workforce Commission sent me a letter saying that TABC had cited my performance as the reason for my termination…Rupp insisted that was not true…[Rupp] assured me that there was no legitimate reaspon [sic] for my termination.

…I learned from…Saenz that…a white male, had replaced me as Chief of Enforcement.

CR. 432.

"'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." TEX. R. EVID. 801(d). To be sure, Pearson offered this alleged testimony of Saenz and Rupp for the truth of the matters asserted, CR. 423-433, thus, every bit of their testimony was inadmissible hearsay.

At the hearing on TABC's Motion, Pearson argued that the testimony by Saenz and Rupp was either (1) hearsay that was admissible as a statement against interest, TEX. R. EVID. 803(24), RR. 13-16, or (2) not hearsay, but rather "[a]n opposing party's statement," otherwise known as an admission by a party opponent. TEX. R. EVID. 801(e)(2). RR. 28:13-16. Pearson did not meet his burden of showing that the testimony was admissible. RR.29-30. *See Volkswagen of Am., Inc.*, 159 S.W.3d at 908 n.5 ("The proponent of hearsay has the burden of showing that the testimony fits within an exception to the general rule prohibiting the admission of hearsay evidence.") (citing *Skillern & Sons, Inc. v. Rosen*, 359 S.W.2d 298, 301 (Tex. 1962)).

### i. Saenz's Alleged Testimony and Rupp's Alleged Testimony in Pearson's Declaration Were Not Statements Against Interest under TEX. R. EVID. 803(24).

A statement against interest is a statement that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability or to make the declarant an object of hatred, ridicule, or disgrace." TEX. R. EVID. 803(24)(A). None of the alleged statements by Saenz and Rupp in Pearson's Declaration meet this criteria.

According to Pearson, Robert Saenz said the following to him after his termination:

- Pearson's "termination was a mistake and that [TABC] had actually meant to fire [Pearson's] African-American co-worker, Dexter Jones" due to issues a Texas House Representative had with Jones.

- "[T]here was a mistake and instead of firing Dexter the agency fired [Pearson] and had, 'fired the wrong black guy.'"

- Saenz "encouraged [Pearson] to contact Don Rupp, Director of Human Rexources [sic], for more information."

- Pearson was replaced as Chief of Enforcement by a white male.

CR.432-433.

Nothing in these alleged statements (1) was contrary to Saenz's proprietary or pecuniary interest, (2) had a great tendency to invalidate Saenz's claim against someone else, (3) exposed Saenz to civil or criminal liability, or (4) would make Saenz an object of hatred, ridicule, or disgrace. Indeed, the statements were entirely exculpatory. Saenz did not take any responsibility for the alleged mistake and instead claimed that "they" and "the agency"—not Saenz—made the alleged mistake. CR.432-433. Further isolating himself from any accountability, Saenz pointed his finger at the Human Resources Director, Rupp, demonstrating that Saenz did not have all of the details surrounding the "mistake"—something he would not need to do if he was the individual who made the "mistake." CR.432-433. None of these statements was against Saenz's interest, and Pearson has failed to establish that they are.

Don Rupp's statements fare no better as statements against interest. Pearson alleges that Rupp told him the following:

- Rupp told Pearson that Pearson's "performance had nothing to do with [Pearson's] termination and that [Rupp] was bothered by it."

- Rupp said "that he did not understand why [Pearson] had been terminated."

- After Pearson told Rupp that the Texas Workforce Commission sent him a letter stating that TABC had cited his performance as the reason for termination, Rupp stated "that was not true and that he would work to correct that with TWC."

- Rupp "assured [Pearson] that there was no legitimate reaspon [sic] for [Pearson's] termination."

CR.432-433.

Again, nothing in these purported statements (1) was contrary to Rupp's proprietary or pecuniary interest, (2) had a great a tendency to invalidate Rupp's claim against someone else, (3) exposed Rupp to civil or criminal liability, or (4) would make Rupp an object of hatred, ridicule, or disgrace. Rupp merely stated that Pearson's performance was not the reason for his termination (which was true), that he would correct that information with TWC regarding Pearson's unemployment claim against TABC, and that he did not understand why Pearson had been terminated. CR.432-433. None of these statements was against Rupp's interest, and Pearson has not established that they are.

### ii. Saenz's Alleged Testimony and Rupp's Alleged Testimony in Pearson's Declaration Were Not "[a]n Opposing Party's Statement" under TEX. R. EVID. 801(e)(2).

Under Texas Rule of Evidence 801(e)(2)(D), an opposing party's statement is not hearsay if it is "offered against an opposing party and…was made by the party's agent or employee on a matter within the scope of that relationship and *while*

19

*it existed.*" (emphasis added). TEX. R. EVID. 801(e)(2)(D). Saenz's and Rupp's alleged statements in Pearson's declaration do not qualify as admissible "opposing party's statement(s)," otherwise known as admissions by a party opponent.

As an initial matter, it is Pearson's burden to prove admissibility, and there is nothing in his declaration to establish that Saenz and Rupp were still TABC's employees when they made the alleged statements. Thus, the statements should be rejected as admissions of a party opponent on that basis alone.

But putting the issue of Saenz's and Rupp's employment aside, none of their alleged post-termination statements to Pearson were made on a matter within the scope of their employment relationship with TABC. CR.432-433. Saenz's conversation with Pearson, a former TABC employee, was a personal conversation—not one made in the scope of Saenz's employment. Indeed, once Pearson was no longer a TABC employee, Saenz no longer had a supervisor-supervisee relationship with Pearson and was not acting in his role as a supervisor anymore.

While Pearson was employed by TABC, he received a termination letter giving the reason for his termination by the Acting Executive Director, Ed Swedberg. CR.179-181. Once Pearson no longer worked for TABC, any conversation Saenz had with Pearson would have—by logical necessity—been in a personal capacity, far outside the bounds of Saenz's job duties and role as a TABC supervisor. If Pearson

wanted to get information or appeal the termination decision, the way to do so would have been to file a grievance with TABC HR, not contact a former supervisor to ask him to opine on why he was terminated.

In addition, and discussed further below, Pearson failed to establish that Saenz had any first-hand knowledge as to why TABC terminated him or was otherwise involved in his termination. Thus, anything he had to say on that subject would be, of necessity, his own personal opinion. And Saenz's opinions on what Saenz thought may have happened were clearly outside the scope of his TABC employment.

*Staheli v. University of Mississippi* is instructive here. 854 F.2d 121 (5th Cir. 1988). In that employment-discrimination case, the Fifth Circuit held that an employee's testimony about an out-of-court statement by the decisionmaker as to why the plaintiff was terminated was not an admission of a party opponent because the testifying employee had nothing to do with that decision. *Id.* at 126–27. The Fifth Circuit stated that the employee's "statement did not concern a matter within the scope of [the employee's] agency and was made in his capacity as wiseacre only." *Id.* at 127. Here, because Pearson has not established that Saenz had any role in the decision to terminate his employment, Saenz made the alleged statements in the declaration "in his capacity as wiseacre only" and not as a TABC employee. *Id.*

Finally, discussing a legislator's alleged issues regarding a TABC Audit employee (Dexter Jones) with a former TABC Enforcement employee who did not supervise the Audit employee was also outside the bounds of Saenz's role at TABC and was clearly made in a personal capacity. CR.277; CR.286.

Likewise, and similarly, Don Rupp's discussion with Pearson about his unemployment claim was outside the scope of Rupp's TABC employment. CR.432-433. Once Pearson filed his unemployment benefits claim, HR's role would not have been to discuss the claim with the claimant but instead to provide information to TWC, so that TWC could take TABC's information and Pearson's information and make a determination about Pearson's eligibility for unemployment benefits. Further, Rupp stating that he did not understand the reason for Pearson's termination, and then contradicting himself by stating that there was no legitimate reason for his termination, was further outside the scope of Rupp's employment as HR Director. It also shows that Rupp's alleged statements were not made in the scope of his employment but "in his capacity as wiseacre only." *Staheli*, 854 F.2d at 127.

In sum, it was Pearson's burden to establish that the alleged statements by Saenz and Rupp in Pearson's declaration were admissible as statements against interest under Rule 803(24) or not hearsay under Rule 801(e)(2). He wholly failed to

do so before the trial court. These alleged statements, therefore, were not admissible, and the trial court abused its discretion in admitting them.

### b. Pearson Failed to Establish that the Testimony in His Declaration Was Based on the Alleged Declarant's Personal Knowledge.

In addition to being inadmissible hearsay, Saenz's and Rupp's alleged statements were inadmissible because Pearson failed to establish that they were based on Saenz's and Rupp's personal knowledge. TEX. R. CIV. P. 166a(f) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."); TEX. R. EVID. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *see also Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) ("An affidavit showing no basis for personal knowledge is legally insufficient.").

First, Pearson completely failed to lay any foundation showing that Saenz had any role in Pearson's termination. As noted above, Acting Executive Director Ed Swedberg was the TABC employee who terminated Pearson. CR.103-105. And Saenz's hearsay testimony in Pearson's declaration makes it clear that Saenz was blaming others at TABC for the alleged "mistake" in terminating Pearson ("***they*** had actually meant to fire [Pearson's] African-American co-worker, Dexter Jones,"

"there was a mistake and instead of firing Dexter *the agency* fired [Pearson]"). CR.432-433 (emphasis added). Therefore, Pearson did not establish that Saenz would have had any personal knowledge of the actual reason for Pearson's termination or that TABC "fired the wrong black guy." Tex. R. Evid. 602.

Second, in his deposition, Pearson testified that Saenz did not know why Pearson was terminated. When questioned about the circumstances of his termination, Pearson testified:

> Q. Okay. Did Mr. Saenz tell you anything?
>
> A. During the meeting, no.
>
> Q. After the meeting?
>
> A. He just told me **he wasn't sure why I got terminated…**
>
> Q. Oh…
>
> A. So he did not know, or **he said he didn't know.**
>
> …
>
> A. **…[Saenz] didn't know why I got terminated.**

CR. 310-311 (153:23-154:4, 154:12-13) (emphasis added).

This deposition was taken in 2023. Pearson was terminated in 2017. In his declaration, Pearson claims that his conversation with Saenz about why he was terminated took place "[s]oon after" he was fired—it certainly took place before his 2023 deposition. CR. 432. Thus, far from establishing that Saenz had any personal knowledge of the reasons for Pearson's termination, all the other evidence in the record establishes the exact opposite.

Third, Pearson did not lay any foundation to establish that Saenz had any personal knowledge about "issues" that a Texas House Representative had with Dexter Jones, or any discussion by others surrounding the proposed termination of Dexter Jones for such "issues." CR.432-433; TEX. R. EVID. 602; TEX. R. CIV. P. 166a(f); *Kerlin*, 274 S.W.3d at 668. Consequently, any testimony on Saenz's behalf about those "issues" would not be based on personal knowledge, and therefore, would be inadmissible.

Fourth, and finally, Rupp's assertion that he did not understand why Pearson was terminated establishes that Rupp did not have the personal knowledge necessary to testify reliably about Pearson's termination. TEX. R. EVID. 602; *Kerlin*, 274 S.W.3d at 668 ("An affidavit showing no basis for personal knowledge is legally insufficient."). Consequently, any statement by Rupp concerning Pearson's termination would be inadmissible—by Rupp's own admission.

### c. Pearson's Declaration Contains an Inadmissible Legal Conclusion.

Finally, in Pearson's declaration, Pearson alleges that Rupp told him that there was "no legitimate reaspon [sic] for [Pearson's] termination." This is obviously opinion testimony and an inadmissible legal opinion by a layperson at that. Indeed, it purports to provide a conclusion or opinion on an ultimate legal issue in this case: whether TABC had a legitimate, nondiscriminatory reason for Pearson's termination. TEX. R. EVID. 701, 702. The trial court, therefore, abused its discretion in admitting this statement over TABC's objection.

### d. Pearson's Declaration is a Sham.

Pearson's declaration is an impermissible sham declaration. Under the sham-affidavit/declaration rule, a court may disregard testimony in the form of an affidavit or declaration that contradicts the affiant's or declarant's previous sworn testimony on a material issue without explanation. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 87 (Tex. 2018). Pearson gave his deposition in 2023. The testimony in his declaration, executed over a year later, directly contradicts his deposition testimony on a key issue. Specifically, as discussed above, Pearson testified in his deposition that Saenz did not know why TABC terminated him. CR. 310-311 (153:23-154:4, 154:12-13). In his declaration, however, Pearson claims that Saenz told him that his termination was a mistake, and TABC "fired the wrong black guy." CR. 432. The deposition took

place long after the alleged conversation that Pearson references in his declaration. Certainly, had Saenz actually told Pearson at some point that Pearson's termination was a mistake and that TABC "fired the wrong black guy," Pearson would have testified to that in his sworn deposition.

Moreover, when asked about the basis of the lawsuit against TABC in the deposition, Pearson never mentioned anything that Saenz told him. Rather, he testified that it was based on an alleged conversation he had with a Texas Workforce Commission agent related to his unemployment-benefits claim. CR. 66:25-67:24.

Pearson's declaration testimony flatly contradicts his previous deposition testimony on issues that are at the heart of this case, and Pearson has made no effort to explain the contradiction. He was being untruthful either during his sworn deposition or in his unsworn declaration. Either way, under such circumstances his declaration testimony should be completely disregarded in any ruling on TABC's Motion.

TABC did not raise this issue below. It raises it on appeal because this is an issue that concerns the trial court's subject-matter jurisdiction. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95-97 (Tex. 2012).

In summary, the trial court abused its discretion in admitting Pearson's declaration over TABC's objections because it (1) contained inadmissible hearsay, (2) showed a clear lack of personal knowledge for the key statements made by the alleged

declarants, Saenz and Rupp, and (3) contained an inadmissible legal conclusion on an ultimate issue in the case. Moreover, it is a sham declaration that should not even be considered. The trial court acted without regard to any guiding rules or principles in considering it as evidence, *Alvarado*, 897 S.W.2d at 754, and as discussed next, the court's actions resulted in an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1).

### 3. The Trial Court's Error in Admitting Pearson's Declaration was Harmful.

Under Texas Rule of Appellate Procedure 44.1(a)(1), a trial court's error is harmful and reversible when it "probably caused the rendition of an improper judgment." TEX. R. APP. P. 44.1(a)(1). An error in admitting evidence on an issue "probably caused the rendition of an improper judgment" when there is little-to-no other evidence on that issue and the issue is a material issue, dispositive of the case. *See Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989); *see also Am. Maintenance & Rentals, Inc. v. Estrada*, 896 S.W.2d 212, 221 (Tex. App.—Houston [1st Dist.] 1995, no writ); *Rosenthal v. Rosenthal*, Nos. 01-99-00058-CV, 01-00-00259-CV, 2001 WL 1383132, *6 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ("Because there is no other evidence on Husband's attorney's fees, the trial court's action [in allowing Husband's counsel to testify as an expert on attorney's fees] caused entry of an improper judgment.").

"An [appellant] seeking to reverse a judgment based on evidentiary error need not prove that but for the error a different judgment would necessarily have been rendered, but only that the error probably resulted in an improper judgment." *Alvarado*, 897 S.W.2d at 753. In assessing harm, the court of appeals reviews the evidentiary record to determine whether the court's decision was controlled by the evidence that the trial court should have excluded. *Gee,* 765 S.W.2d at 396 ("[W]e must review the entire record to determine whether the judgment was controlled by the testimony that should have been excluded.").

Here, the *only* evidence Pearson attached to his response to TABC's Motion was his Declaration. CR. 423-433. And in his response, Pearson relied *solely* on the inadmissible testimony in his declaration in claiming that he (1) had direct evidence of race discrimination, (2) could establish a prima facie case of discrimination, and (3) had evidence that TABC's legitimate, non-discriminatory reason for terminating him was pretextual. CR. 423-433. To be sure, the testimony in Pearson's declaration was not at all duplicative of any other admissible evidence before the trial court in deciding TABC's Motion. Without it, he could not even establish a *prima facie* case

of discrimination because there was nothing else properly before the court[1] establishing who replaced him at TABC. Finally, and most significantly, during the hearing on TABC's Motion, the trial court judge made it clear that she was relying on the testimony in Pearson's Declaration—specifically, the hearsay testimony that TABC "fired the wrong black guy"—in denying TABC's Motion. RR. 6:2-4; 24:25-26:11; 27:21-28:7; 29:5-17; 46:17-20; 47:1; 48:17-18; 50:20-25.

In its Motion, TABC established—as a matter of law—a legitimate, non-discriminatory reason for terminating Pearson. CR. 142-151. Thus, had the trial court sustained TABC's objections as it should have, the court would have—by necessity—granted TABC's Motion because there was no admissible evidence in the record that would create a genuine issue of material fact as to whether he was the victim of illegal employment discrimination. The trial court's error, therefore, almost certainly caused the rendition of an improper judgment, and should be reversed. *See* TEX. R. APP. P. 44.1; *Alvarado*, 897 S.W.2d at 753-54 ("A successful challenge to

---

[1] TABC included Pearson's interrogatory responses as evidence with its Motion. In his answers, Pearson asserts that he was replaced by a white male after his termination and that in terminating him, TABC terminated "the wrong black man." CR. 116. However, Pearson could not have relied on his own interrogatory answers as summary judgment evidence. *See Fisher v. Yates,* 953 S.W.2d 370 (Tex. App.—Texarkana 1997), *pet. denied sub nom. Yates v. Fisher,* 988 S.W.2d 730 (Tex. 1998) (per curiam) (noting that a non-moving party cannot use its own interrogatory answers as summary judgment evidence).

evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence…admitted.").

## B. Even Considering Pearson's Declaration, the Trial Court Erred in Denying TABC's Motion.

In its second issue TABC asserts that even if Pearson's declaration was properly before the trial court, the trial court erred in denying the Motion. First, the declaration does not contain direct evidence of unlawful discrimination. Rather, the alleged statement that TABC "fired the wrong black guy" is a stray remark, as is Rupp's remark that TABC had no legitimate basis for terminating Pearson. Thus, neither statement is at all probative of discrimination. As a circumstantial-evidence case—assuming that Pearson could establish a *prima facie case* of discrimination—TABC carried its burden to establish a legitimate, non-discriminatory reason for Pearson's termination. Pearson's summary-judgment evidence failed to establish that this reason was a pretext for illegal discrimination. Second, even if the declaration contained direct evidence of discrimination, TABC established—as a matter of law—that it would have taken the same actions respecting Pearson absent any discriminatory motive.

### 1. This is a Circumstantial-Evidence—Not a Direct-Evidence—Case.

Under the TCHRA, an employer may not discriminate against or discharge an employee based on "race, color, disability, religion, sex, national origin, or age."

TEX. LAB. CODE § 21.051; *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam). The Texas Legislature patterned the TCHRA after federal law "for the express purpose of carrying out the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." *Elgaghil v. Tarrant Cnty. Junior Coll.*, 45 S.W.3d 133, 139 (Tex. App.—Fort Worth 2000, pet. denied); *see also Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 474 (Tex. 2001) (stating same). When analyzing a claim brought under the TCHRA, Texas courts look to state cases as well as to the analogous federal statutes and the cases interpreting those statutes. *Toennies*, 47 S.W.3d at 476; *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 814 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *see also* TEX. LAB. CODE ANN. § 21.001(1).

"[I]n employment discrimination cases, a plaintiff may rely on direct or circumstantial evidence, or both." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010). Direct evidence of race discrimination in employment is evidence that proves the fact that race was a reason for the adverse employment action without any inferences or presumptions. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 456 (5th Cir. 2019). In Pearson's response to TABC's Motion, he argued that the statement in his declaration, allegedly, by Saenz, that TABC "hired the wrong black guy" was direct evidence of discrimination and that this case

should be analyzed as a direct-evidence case. CR. 424. Contrary to Pearson's assertion, the statement is not direct evidence of discrimination. Indeed, as discussed further, it is not probative of discrimination at all.

A comment or remark is direct evidence that is probative of discrimination only if it meets four criteria: (1) it must be related to the plaintiff's protected class, (2) it must have been made close in time to the employment decision at issue, (3) it must be made by an individual with authority over the employment decision, and (4) it must be related to the employment decision at issue. *AutoZone, Inc.*, 272 S.W.3d at 593. It is ultimately the proponent-of-the-evidence—the plaintiff's—burden to establish that all four criteria are met. *See id.* If the statement or remark fails to meet these criteria, it is a mere "stray remark" without any evidentiary power. *See, e.g., id* at 592-93 ("We have held that stray remarks are insufficient to establish discrimination and statements made remotely in time by someone not directly connected with termination decisions do not raise a fact issue about the reason for termination.").[2]

---

[2] TABC did not file a reply to Pearson's response to its Motion; therefore, it did not raise this argument before the trial court. Ordinarily new issues may not be raised for the first time on appeal, though there is an exception for issues demonstrating an absence of subject-matter jurisdiction. *See Rusk State Hosp. v. Black,* 392 S.W.3d 88, 95–97 (Tex. 2012). Thus, to the extent this argument is considered an issue raised for the first time on appeal, it is permitted because it demonstrates the absence of subject-matter jurisdiction.

In *AutoZone*, the Texas Supreme Court held that a statement to the plaintiff in an age discrimination case—a 62-year-old parts service manager terminated for sexual harassment—by his store manager that AutoZone was trying "to get rid of 'the old people'" was a stray remark "insufficient to establish discrimination." *Id.* at 591-93. The court found that the store manager "played [no] part in Auto-Zone's…decision to discharge [the plaintiff] nor did he possess any leverage over the…decision…Further, [he]…was not part of the management team that…made the decision." *Id.* at 593. The plaintiff argued that the store manager's statement had evidentiary weight because he had no personal discriminatory animus "but merely conveyed [his] knowledge of AutoZone's reasons for terminating [the plaintiff]." *Id.* The court rejected this argument because there was no evidence that the store manager "had a basis on which to represent AutoZone's motive or intent as to [the plaintiff's] discharge." *Id.* And "[r]egardless of whether [the store manager's] statements were an expression of what he thought to be AutoZone's purpose, there was no evidence that [the store manager] was involved in, had leverage over, or knew or was in a position to know whether age was a motivating reason for the discharge." *Id.*

This case is virtually on all fours with *AutoZone*. Here, Pearson alleges that his former supervisor, Saenz, told him that TABC had "'fired the wrong black guy'" when it terminated his employment, and that, according to Saenz, TABC made a

mistake and meant to fire someone else. CR. 432. Notably, as discussed at length above, Pearson has provided no evidence that Saenz had any authority or input into the decision to terminate Pearson or that he was involved in any way. Indeed, Pearson's deposition testimony suggests the exact opposite. CR. 310-311 (153:23-154:4, 154:12-13). Moreover, there is no evidence that Saenz learned this alleged reason from anyone who was involved in Pearson's termination or knew, or was able to know, why TABC terminated Pearson's employment. Consequently, Saenz's alleged statement that TABC "fired the wrong black guy" is a "stray remark." It is not direct evidence or any evidence whatsoever of race discrimination.

Rupp's alleged assurance to Pearson that "there was no legitimate reaspon [sic] for [Pearson's] termination," CR. 432, is a stray remark and is not probative of discrimination for the very same reasons. As discussed above, Pearson has not provided any evidence that Rupp was involved in his termination and there is no evidence that Rupp learned the reasons for his termination from anyone who was. Indeed, at the same time Rupp was allegedly telling Pearson there was no legitimate reason for his termination, Rupp also told Pearson that "he did not understand why Pearson was terminated." CR. 432. Although Pearson did not argue to the trial court

that Rupp's statement concerning Pearson's termination constituted direct evidence of discrimination, it certainly does not, and it is not probative of discrimination at all.

### 2. TABC Established a Legitimate, Non-Discriminatory Reason for Pearson's Termination.

Where—as here—a plaintiff must rely on circumstantial evidence to establish a discrimination claim, courts follow the burden-shifting framework the U.S. Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Tex. Tech Univ. Health Scis. Center El-Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020); *Clark*, 544 S.W.3d at 782. Under this framework: (1) the plaintiff must first create a presumption of illegal discrimination by establishing a *prima facie* case; (2) the defendant must then rebut that presumption by producing evidence of a legitimate, non-discriminatory reason for the employment action; and (3) the plaintiff must then overcome the rebuttal evidence by producing evidence that the defendant's stated reason is a mere pretext and that illegal discrimination is the real reason. *Id.*

TABC's burden to articulate a legitimate, non-discriminatory reason for Plaintiff's termination is "only one of production, not persuasion, and involves no credibility assessment." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). TABC does

not need to prove that its proffered reason was the actual motivation, but its explanation "must be legally sufficient to justify judgment" for the employer. *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

The U.S. Supreme Court has noted that the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253. Restated, "[i]t is not enough [...] to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993) (emphasis in original).

Even assuming that Pearson's declaration would be sufficient to establish a *prima facie* case of discrimination, TABC, in its Motion, met its burden of establishing a legitimate, non-discriminatory reason for Pearson's termination that had nothing to do with his race. CR. 124-153. In the spring and summer of 2017, several high-ranking officials at TABC resigned, retired, or were terminated in the wake of increased scrutiny of the agency after public criticism on multiple issues. CR. 206-207, 212, 215-216, 219-220, 227. Texas Governor, Greg Abbott appointed a new TABC Chairman to help "clean up" the embattled agency. CR.206. Governor Abbott expressed through his spokesperson that Abbott's office was "actively working with"

the new Chairman, who had been "conducting a top-to-bottom review of all personnel and operations to reform TABC." CR.207. Reacting to the announcement that TABC's Executive Director, Sherry Cook, was leaving her post, Governor Abbott stated in a tweet: "It's time to clean house from regulators not spending taxpayer money wisely. This is a good start." CR.212, CR.215-216, CR.219-220. An ongoing effort was made by Governor Abbott and the new TABC Chairman "to shake up the agency and install new people in top leadership posts." CR.227.

The high-ranking officials at TABC who resigned, retired, or were terminated in the spring and summer of 2017 included Commissioner Steven Weinberg, Executive Director Sherry Cook, Deputy Executive Director Ed Swedberg, General Counsel Emily Helm, Director of Licensing Amy Harrison, Director of Professional Responsibility Andy Peña, and Assistant Chief of Enforcement, Pearson. CR.218-392. The change in these leadership positions had nothing to do with race. Indeed, the Commissioner and employees who resigned, retired, or were terminated in the wake of increased scrutiny of TABC after public criticism of TABC included five white males and females, a Hispanic male, and an African-American male (Pearson). CR.328-330.

As with the Commissioner and the high-ranking TABC employees who were terminated or offered the opportunity to resign or retire, Pearson's continued employment was evaluated in light of the new direction in which the new TABC leadership wanted to take the agency. CR.335-337. Acting Executive Director of TABC Ed Swedberg terminated Pearson after it was determined that Pearson did not exhibit the leadership and initiative that was expected from the new TABC leadership that would justify his continued employment at TABC. CR.335-337.

### 3. Pearson Did Not Establish that TABC's Reason for Terminating His Employment Was a Pretext for Discrimination.

In his response to TABC's Motion, Pearson argues that "there is ample evidence of pretext to raise a material fact" because Saenz "admitted the reason [TABC gave] for the termination is false." CR. 426. As already discussed, however, Saenz's so-called admission is a stray remark and is not probative of discrimination. Likewise, Rupp's alleged statement that there was no legitimate reason for Pearson's termination is a stray remark and cannot be considered evidence of discrimination.

The only other evidence Pearson cites is TABC's alleged "changing stories on the reason for [his] termination." CR. 426. According to Pearson, TABC has changed its story because it did not give a specific reason in its termination letter to Pearson and now asserts that Pearson was terminated for "misconduct and lack of leadership and initiative." *Id.* This is unpersuasive. First, it is not true. TABC did

give Pearson a reason for his termination. In an inter-office memo from Ed Swedberg, TABC told Pearson "[a]fter deliberation…it has been decided that the agency is moving in a different direction," and that Pearson "[would] not be part of that direction." CR. 105. Second, even if TABC had not given Pearson a reason, no reasonable juror could infer that TABC changed its reasons by going from not giving a reason to giving a reason. That is not a change in reasons; it is a change from non-disclosure to disclosure. Third, and finally, TABC's reason for Pearson's termination—leadership's move in a different direction—has never changed. It is what TABC told Pearson on July 5, 2017, and it is what TABC told the trial court in its Motion. *See* CR. 75, 105. While TABC may have been more detailed with its reasons in its Motion, it has not been inconsistent.

Even if Pearson had some evidence that TABC's proffered reasons for his termination were false, there is no reason to believe that illegal discrimination was the real reason. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) ("liability depends on whether the protected trait […] actually motivated the employer's decision."). Indeed, there is no evidence that similarly situated non-African-American employees were treated more favorably than Pearson. To be sure, TABC gave him the option of resigning as opposed to being terminated like all of the other high-ranking employees terminated around the same time. CR. 105.

Moreover, the documentary evidence as well as the termination of other TABC executives resulting from increased legislative and media scrutiny on the agency, and the mandate for TABC to move in a new direction, proves that race was not a factor in TABC's decision to terminate Pearson. None of the other executives who were terminated were African-American. CR.173-174. Five of the executives, the Commissioner, the Executive Director, the Deputy Executive Director, the General Counsel, and the Director of Licensing were all white, and the Director of the Office of Professional Responsibility was Hispanic. Pearson, the Chief of Enforcement, like his fellow executives was let go because the agency was going in a different direction. CR.310. (152:20-153:22). The TABC Executives' tenure had been marred by a very public scandal involving spending on lavish, unnecessary trips. CR.355-392. Pearson, like his non-African-American peers, was terminated because of a change in agency culture and goals. CR.310. (152:20-153:22). As such, the trial court erred when it denied TABC's Motion. RR.50-51.

Ultimately, Pearson is only left with his subjective belief that race was a factor in his termination. But the mere fact that Plaintiff may disagree with the termination decision or subjectively believes it was due to discrimination is of no consequence and does not entitle him to any relief. *See Bauer v. Albemarle Corp.*, 169 F.3d 962, 967

(5th Cir. 1999) ("This court has consistently held that an employee's subjective belief of discrimination alone is not sufficient to warrant judicial relief."); *Grimes v. Tex. Dep't of Mental Health & Retardation*, 102 F.3d 137, 140 (5th Cir. 1996); *Robertson v. Alltel Info. Serv.*, 373 F.3d 647, 654 (5th Cir. 2004).

In sum, in analyzing this case as a circumstantial-evidence case, which it is, TABC met its burden of production in establishing a legitimate, non-discriminatory reason for terminating Pearson. In response, Pearson is wholly unable to show that this reason was a pretext for illegal discrimination. The Texas Supreme Court has made clear that the failure to establish pretext deprives the court of subject matter jurisdiction. *Clark*, 544 S.W.3d at 783. Consequently, Pearson's race discrimination lawsuit does not fall within the TCHRA's limited waiver of immunity and does not withstand summary judgment scrutiny, and the trial court erred in denying TABC's Motion.

### 4. Even if the Alleged Statements in Pearson's Declaration Were Considered Direct Evidence of Discrimination, His Claim Fails as a Matter of Law.

If a plaintiff presents direct evidence of race-based discrimination, the burden of proof shifts to the employer to establish—by a preponderance of the evidence—that the employer would have made the same decision regardless of the plaintiff's

race. *Price v. Valvoline, L.L.C.*, 88 F. 4th 1062, 1066 (5th Cir. 2023). Thus, even assuming that the alleged statements in Pearson's declaration were considered direct evidence of employment discrimination, his claim would still fail because—for all of the reasons stated above—TABC has established, as a matter of law, that it would have made the same decision regardless of Pearson's race.

## CONCLUSION

As set forth above, the trial court erred in denying TABC's Motion—the record demonstrates that TABC is entitled to sovereign immunity from Pearson's claims. First, the trial court erred in admitting Pearson's declaration as evidence over TABC's objections and then relying on it in denying TABC's Motion. Second, even assuming the declaration was properly before the trial court, it erred in denying TABC's Motion because Pearson failed to adduce sufficient evidence that TABC's legitimate, non-discriminatory reasons for his termination were a pretext for illegal discrimination.

## PRAYER

For the foregoing reasons, TABC respectfully requests that this Court reverse the district court's denial of Defendant's Plea to the Jurisdiction and Motion for Summary Judgment and render judgment dismissing Pearson's race-based discrimination claim with prejudice.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

KIMBERLY GDULA
Chief for General Litigation Division

BRENT WEBSTER
First Assistant Attorney General

*/s/ C. Lee Winkelman*
C. LEE WINKELMAN
Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

Texas Bar No. 24042176
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

Austin, Texas 78711-2548
(737) 231-7737 | FAX: (512) 320-0667
lee.winkelman@oag.texas.gov

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed electronically and that notice of this filing will be sent to the following persons through File & Serve Texas's electronic filing system on June 23, 2025:

John F. Melton
Michael W. Balcezak
The Melton Law Firm, PLLC
925 South Capital of Texas Highway, Ste B225
Austin, Texas 78746
(512) 330-0017 Telephone
(512) 330-0067 Facsimile
*Attorney For Appellee*

*/s/ C. Lee Winkelman*
**C. Lee Winkelman**
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE

Pursuant to TRAP 9.4(i)(3), the undersigned Assistant Attorney General hereby certifies that the preceding document complies with the type-volume limits in TRAP 9.4.

1. Excluding the exempted portions in TRAP 9.4(i)(l), the brief contains: 9,508 words; and

2. has been prepared using: Microsoft Word in 14 pt. Equity, a conventional typeface Font, with 12 pt. footnotes.

The undersigned understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in TRAP 9.4, may result in the court's striking the brief and prohibiting the party from filing further documents of the same kind.

*/s/ C. Lee Winkelman*
**C. Lee Winkelman**
Assistant Attorney General

# In the Court of Appeals for the Fifteenth Judicial District Austin, Texas

————

Texas Alcoholic Beverage Commission,
*Appellant*,

*v.*

Earl Pearson,
*Appellee.*

————

On Appeal from the
261st Judicial District Court, Travis County

————

**APPELLANT'S APPENDIX**

————                                        TAB

1. Order Denying Defendant's Plea to the Jurisdiction ....................................A

2. Defendant's Notice of Interlocutory Appeal .................................................. B

TAB A: Order Denying Defendant's Plea to the Jurisdiction

CAUSE NO.: D-1-GN-18-001703

| | | |
|---|---|---|
| EARL PEARSON | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | 261st JUDICIAL DISTRICT |
| | § | |
| TEXAS ALCOHOLIC BEVERAGE | § | |
| COMMISSION | § | |
| Defendant. | § | TRAVIS COUNTY, TEXAS |

## ORDER DENYING DEFENDANT'S PLEA TO THE JURISDICTION AND MOTION FOR SUMMARY JUDGMENT

On the 11th day of March, 2025, came on to be heard, Defendant's Plea to the Jurisdiction and Motion for Summary Judgment. Having considered the motion, the Plaintiff's response thereto, and arguments of counsel, the Court hereby denies Defendant's Plea to the Jurisdiction and Motion for Summary Judgment.

IT IS THEREFORE ORDERED, that Defendant's Plea to the Jurisdiction and Motion for Summary Judgment are DENIED.

SIGNED this _13th_ day of _March_____, 2025.

_____

Honorable Laurie Eiserloh
455th Judicial District Judge, Travis County



TAB B: Defendant's Notice of Interlocutory Appeal

3/25/2025 3:17 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001703
Eva Fairchild

CAUSE NO. D-1-GN-18-001703

| EARL PEARSON, | § | IN THE DISTRICT COURT |
|---|---|---|
| *Plaintiff* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| TEXAS ALCOHOLIC BEVERAGE | § | |
| COMMISSION, | § | |
| *Defendant.* | § | 261st JUDICIAL DISTRICT |

---

## DEFENDANT'S NOTICE OF INTERLOCUTORY APPEAL AND AUTOMATIC STAY

---

TO THE HONORABLE COURT:

Defendant, The Texas Alcoholic Beverage Commission ("Defendant" or "TABC"), hereby files this *Notice of Interlocutory Appeal and Automatic Stay*, and in support thereof, would respectfully show as follows:

1. On March 13, 2025, this Court signed an order denying *Defendant's Motion for Summary Judgment and Plea to the Jurisdiction* (*See* Exhibit A).

2. Pursuant to Section 51.014 of the Texas Civil Practice and Remedies Code, the denial of any part of a plea to the jurisdiction asserted by a governmental unit is an interlocutory order that is immediately appealable. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8). Pursuant to Section 25.1(d)(6) of the Texas Rules of Appellate Procedure, this is an accelerated appeal. TEX. R. APP. P. 25.1(d)(6). In this case, Defendant appeals the Court's denial of its Plea to the Jurisdiction.



3.      Defendant filed its motion and plea in accordance with the Court's deadline for dispositive motions; thus, this appeal automatically stays the trial and all other proceedings of this matter in the district court pending resolution of this appeal.  *See* TEX. CIV. PRAC. & REM. CODE § 51.014(b).

4.      Defendant makes this appeal to the Court of Appeals for the Fifteenth District.

5.      Notice is further given that pursuant to Texas Civil Practice & Remedies Code § 6.001, Defendant is not required to file a bond. Defendant's appeal is therefore perfected upon the filing of the notice of appeal.

Respectfully submitted,

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Division Chief, General Litigation Division

*/s/ Kelsey L. Warren*_____
**KELSEY L. WARREN**
Assistant Attorney General
Texas Bar No. 24095736
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone (512) 475-4083
Facsimile: (512) 320-0667
kelsey.warren@oag.texas.gov

**ATTORNEY FOR DEFENDANT TABC**



## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served electronically through the electronic filing manager, on March 25, 2025, upon all counsel of record.

*/s/ Kelsey L. Warren*
**KELSEY L. WARREN**
Assistant Attorney General



**Automated Certificate of eService**
This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 102312927
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: 20250623_Pearson Appellant brief_FINAL
Status as of 6/23/2025 4:23 PM CST

Associated Case Party: Earl Pearson

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| John Melton | 24013155 | jmelton@jfmeltonlaw.com | 6/23/2025 3:02:27 PM | SENT |
| Michael Balcezak | | Michael@jfmeltonlaw.com | 6/23/2025 3:02:27 PM | SENT |

Associated Case Party: Texas Alcoholic Beverage Commission

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lee Winkelman | | lee.winkelman@oag.texas.gov | 6/23/2025 3:02:27 PM | SENT |
| Laura Hendrix | | laura.hendrix@oag.texas.gov | 6/23/2025 3:02:27 PM | SENT |